S. Larry CROOKSTON, Randi L. Crookston, and Anna W. Drake, Trustee of the Estate of Spencer Larry Crookston and Randi Lynn Crookston, Plaintiffs and Appellees,

.v.

FIRE INSURANCE EXCHANGE, a California corporation, Defendant and Appellant.

No. 920172.

Supreme Court of Utah.

Oct. 7, 1993.

M. Douglas Bayly, L. Rich Humpherys, Salt Lake City, for plaintiffs and appellees.

Philip R. Fishler, Stephen J. Trayner, Salt Lake City, and Frank A. Roybal, Bountiful, for defendant and appellant.

ZIMMERMAN, Justice:

This case is before us for the second time. In the first appeal, *Crookston v. Fire Insurance Exchange*, 817 P.2d 789, 806 (Utah 1991) (*Crookston I*), we affirmed a jury finding of fraud against defendant Fire Insurance Exchange and an award of $815,826 in compensatory damages to plaintiffs Spencer Larry Crookston and Randi Lynn Crookston. However, we also vacated the trial court's denial of a motion by Fire Insurance for a new trial based on its claim that the $4,000,000 punitive damage award was excessive. *Id.* at 808. We remanded that motion so that the trial court could reconsider the award in light of the principles set forth in *Crookston I*. On remand, the trial court again denied the motion. Fire Insurance appeals, and we affirm.

The relevant facts are recited at length in *Crookston I* and will not be repeated here except as necessary.

■ We first note the standard of review. In considering a trial court's decision to deny a new trial, we reverse only if we find an abuse of discretion, i.e., no reasonable basis for the decision. *Id.* at 804–05. However, if the trial court has made a determination of law that provides a premise for its denial of a new trial, such a legal decision is reviewed under a correctness standard. *See State v. Ramirez*, 817 P.2d 774, 781 n. 3 (Utah 1991); *State v. Petersen*, 810 P.2d 421, 425 (Utah 1991); *see also State v. Thurman*, 846 P.2d 1256, 1270 n. 11 (Utah 1993).

Fire Insurance makes several arguments attacking the denial of its motion. First, it contends that because *Crookston I* articulated a new standard for determining the excessiveness of a punitive damage award, we should vacate this award and remand for a redetermination of the amount by a properly instructed jury.[1] Second, Fire Insurance contends that on remand, the trial court did not properly apply the standards articulated in *Crookston I* in deciding the motion for a new trial.

■ Addressing Fire Insurance's first argument, we find no merit to the contention that the trial court should have granted the motion for a new trial so as to allow the jury to reconsider the award after receiving new instructions. Explaining this ruling requires a brief recap of *Crookston I's* treatment of the law governing the determination of the excessiveness of punitive damage awards and then a consideration of the instructions actually given in the present case.

In assessing the seven-factor balancing approach used to determine punitive damages,[2] which our case law approves and which is commonly used across the country, *Crookston I* found the approach lacking in guidance "for ... a jury fixing the punitive damages, a trial court reviewing a challenge to the amount of such an award, or an appellate court reviewing a trial court's grant or denial of a new trial on

---

1. As we noted in *Crookston I,* section 78-18-1 of the Code applies to punitive damage awards made in cases arising on or after May 1, 1989. 817 P.2d at 807 n. 23; *see* Utah Code Ann. § 78-18-1.

2. The seven factors are:
   (i) the relative wealth of the defendant;
   (ii) the nature of the alleged conduct;
   (iii) the facts and circumstances surrounding such conduct; (iv) the effect thereof on the lives of the plaintiff and others; (v) the probability of future recurrence of the misconduct; (vi) the relationship of the parties; and (vii) the amount of actual damages awarded.
   *Crookston I,* 817 P.2d at 808.

grounds of an inadequate or excessive award." 817 P.2d at 808. No relative weights had been assigned to the factors, "and no standards or formulas [had] been established for properly evaluating them when making an award or when reviewing the propensity of a jury award." *Id.*

*Crookston I* did note, however, that by looking only at the results of our prior cases, rather than trying to find some consistent underlying analytical model, some guidelines for reviewing the excessiveness of awards could be found: "[T]he results of our prior cases dealing with challenges to damages, taken as a whole, provide patterns that furnish useful guidance...." *Id.* The patterns of results in those cases demonstrate that "where the punitives are well below $100,000, punitive damage awards beyond a 3 to 1 ratio to actual damages have seldom been upheld and that where the award is in excess of $100,000, we have indicated some inclination to overturn awards having ratios of less than 3 to 1." *Id.* at 810. *Crookston I* then used these patterns as a basis for presumptive guidelines to be used by trial courts in ruling on motions for a new trial or motions for remittitur founded on the claim that a punitive damage award is excessive. *Id.* at 811. Specifically, we said that an award exceeding the patterns of ratios observed in our prior cases raises a presumption that the award is excessive and that a failure by the trial court to reduce the award or order a new trial is an abuse of discretion. *Id.* To overcome this presumption, the trial court must explain why the case is unique, usually in terms of one of the established seven factors or "some other factor that seems compelling." *Id.*

With this background in mind, we address Fire Insurance's claim that *Crookston I* changed the law sufficiently to warrant a new punitive damage determination under new jury instructions. We recognize that the patterns described in *Crookston I* had not been commented on by an appellate court before the issuance of the *Crookston I* opinion and that the guidelines *Crookston I* derived from those patterns had not yet been laid down. However, at the time of

trial, those patterns constituted the law in the sense that those cases allowed the prediction of how future cases might be resolved by anyone willing to undertake review of our prior decisions with an eye toward seeing the patterns. *See* Oliver Wendell Holmes, *The Path of the Law*, 10 Harv.L.Rev. 457, 460–61 (1896). Therefore, nothing in *Crookston I* changed the legal force of that prior case law. The "law" that punitive to compensatory ratios of greater than 3 to 1 when the award is less than $100,000 would be viewed skeptically when challenged as excessive and that even lower ratios would be similarly viewed in awards exceeding $100,000 was settled at the time the jury in this case was instructed. *See Crookston I*, 817 P.2d at 810.

We acknowledge that the jury instructions given by the court below did not explain the ratios that constitute a presumptively excessive punitive damage award. The jury was instructed only on the seven factors to be considered in determining the award. However, the guidelines in *Crookston I* are primarily for the trial judge, who is called upon to consider the propriety of a punitive damage award on a post-verdict motion. *See, e.g., id.* at 811 ("In these patterns, we find that guidelines emerge for trial courts faced with challenges to punitive damage awards...."). On its face, *Crookston I* does not require imparting the same presumptive-ratio guidelines to the jury itself. Moreover, Fire Insurance had the responsibility of proposing any additional jury instructions, but failed to do so. In short, because we find that the jury in *Crookston I* was sufficiently instructed, we conclude that the trial court properly denied the motion for a new trial.

▮▮▮ Fire Insurance's second argument is that the trial court, on remand, did not properly apply the standards set out in *Crookston I* and that if the holding of that case had been followed, the trial court would have concluded that the award here was excessive. We do not review de novo

a trial court's actual or imputed[3] decision denying the motion for a new trial. So long as the trial court applied the correct legal standards, and we find it did in this case, we review the trial court's decision denying the motion only for an abuse of discretion. *See Ramirez*, 817 P.2d at 781 n. 3; *see also Thurman*, 846 P.2d at 1270 n. 11.

In mounting its challenge, Fire Insurance relies primarily on the size of the punitive damages awarded and the ratio of the punitive award to compensatory damages. Fire Insurance first notes that a large portion of the actual damages here were "soft" (pain and suffering) rather than "hard" (out-of-pocket costs). Under our cases, soft compensatory damages, "which must be awarded with caution," 817 P.2d at 806, are not to be given equal weight with hard compensatory damages when evaluating the relationship between punitive and compensatory damages. *See id.* at 811–12 n. 29. Fire Insurance points out that in the instant case, the operative ratio of punitive damages to *hard* compensatory damages is more than 10 to 1 while the ratio is slightly less than 5 to 1 when taking both hard and soft compensatory damages into account. It argues that no circumstances presented could justify a punitive award that produces a ratio so far outside the range of our past cases.

It is certainly true that the punitive award here is without precedent in Utah, either as to the amount or as to the high ratio of punitive damages to hard compensatory damages. The presumption, therefore, is that the award is excessive. However, as we said earlier, this presumption may be overcome if the trial court explains why the case is unique in terms of one of the traditional seven factors or in terms of some other compelling factor. *Id.* at 811.

Here, the trial court issued a very detailed 23–page memorandum of decision. For the sake of brevity, we discuss only the most important factors relied on by the trial court in denying the motion for a new trial. First, there is a constellation of circumstances that the court cited in support of the view that Fire Insurance's actions were particularly heinous and deserving of punishment. These include the following: (i) The fraud practiced upon the Crookstons by Fire Insurance was of the most blatant sort, was done to save the company a relatively paltry sum, and was committed with almost certain knowledge that the Crookstons would be exposed to ruinous bankruptcy; (ii) Fire Insurance personnel were well aware that their actions would deprive the Crookstons of precisely the protection from catastrophic losses that the insurance policy was purchased to protect against; (iii) the supervisors involved found nothing objectionable about the fraudulent conduct of their subordinates and, in fact, praised it as sound business practice; and (iv) the consequences of the fraud on the financial and mental health of the Crookstons were devastating.

Obviously, these circumstances show that the fraud was calculated, willful, and particularly damaging to the Crookstons. Taken individually, however, these circumstances are generally comparable to fact situations presented in past cases in which we adhered to the pattern of ratios discussed in *Crookston I*. That pattern was considered adequate to provide compensation which would make the victims whole while punishing and deterring the tort-feasors. *See, e.g., Von Hake v. Thomas*, 705 P.2d 766, 771–72 (Utah 1985) (willful fraud devastated victim financially and emotionally); *Jensen v. Pioneer Dodge Center, Inc.*, 702 P.2d 98, 101 (Utah 1985) (punitive damages cut despite willful conversion of victim's property); *Cruz v. Montoya*, 660 P.2d 723, 727 (Utah 1983) (vicious beating left plaintiff with severe injuries, but court cut punitives of $12,000 as excessive); *Terry v. Z.C.M.I.*, 605 P.2d 314, 328–29 (Utah 1979) (false arrest caused debilitating depression in victim). Although our prior cases do not present quite the same array of egregious circumstances as this one,

---

**3.** *See Crookston I,* 817 P.2d at 812 (to avoid anomalous results, when challenge to punitive damage award is raised for first time on appeal, appellate court will review as though motion for new trial had been made and denied).

that fact alone is insufficient to support the trial court's decision to uphold a punitive damage award of this size and ratio, especially when the ratio of punitive damages to hard and soft compensatory damages is so high.

The trial judge, however, cited an additional unique factor justifying the punitive award, both in its dollar amount and in its proportion to the hard compensatory damages. The court stated that the conduct at issue was done with the sole apparent purpose of enabling the insurance company to avoid paying out sums legitimately owed to the Crookstons. This conduct, the court said, demonstrated the company's "calculated and calloused attitude" toward settling valid claims. The court also observed that Fire Insurance operates a number of offices in Utah which process 4000 to 5000 claims a year. Given the large volume of claims handled annually, Fire Insurance's vast financial resources, and management's active endorsement of the fraudulent conduct, the court deduced that this sort of practice would be widely engaged in unless devastatingly punished. "One may never know how many of the thousands of claims handled in Utah and elsewhere by Fire Insurance have been subjected to the same kind of fraudulent manipulation as occurred in this case...." Under such circumstances, the court concluded that although the ratio of punitive damages to compensatory damages was out of line with Utah case law, the jury award was justified to assure that Fire Insurance would not find it profitable to continue this sort of fraudulent conduct and to induce it "to bring its practices into harmony with common moral conduct and accepted business ethics, to say nothing of the requirements of the law."

We have never considered a situation quite like this. From the evidence presented at trial, the court could reasonably conclude that Fire Insurance conducted what amounted to a conscious policy of fraudulently denying its customers the benefits of their contracts in situations in which the harm caused to its customers would likely far exceed any financial benefit that would accrue to the company from each particular transaction. It could be inferred that Fire Insurance's motive for engaging in such conduct was to substantially increase its profits. Depriving a company of the benefits of such a course of conduct and deterring it from acting in this fashion in the future may warrant an award of punitive damages that far exceeds the ratios that we have previously found reasonable. If a company could predict that its systematic fraudulent conduct would evade detection in many instances and on those few occasions where it was discovered, would never result in punitive damages greater than the ratios we have historically upheld, it could carefully calculate the cost/benefit ratio of its wrongful conduct and avoid the deterrent potential of punitive damages. Frustrating this sort of calculus was one of the reasons we gave in *Crookston I* against adopting rigid dollar amounts or ratio ceilings on punitive damage awards. 817 P.2d at 809. The facts here add weight to that reasoning. Because of the unique circumstances just described, we conclude that the trial court did not abuse its discretion in refusing to order a new trial on punitive damages.

A word on the process that resulted from *Crookston I*'s remand: By focusing our attention on the factor just discussed in explaining the denial of Fire Insurance's motion for a new trial and by forcing a comparison of this case with other cases that have come before us, the trial court performed precisely the function that *Crookston I* contemplated. A trial court's careful explanation of its reasoning when upholding a presumptively excessive punitive damage award assists this court in "more carefully consider[ing] the various factors that may warrant punitives and the weight to be accorded them, while giving adequate deference to the advantaged position of the trial judge to appraise the witnesses and the evidence." *Id.* at 811. We reiterate our view that "[s]uch appellate review will presumably lead to more substantive analysis of the punitive damage

standards than has been heretofore possible." *Id.*

We find Fire Insurance's other arguments to be without merit. The judgment below is affirmed.

HALL, C.J., STEWART and DURHAM, JJ., and ORME, Court of Appeals Judge, concur.

HOWE, Associate C.J., having disqualified himself, does not participate herein; ORME, Court of Appeals Judge, sat.