2000 UT 11

STATE of Utah, Plaintiff and Appellee,

v.

William Jesse LOOSE, Defendant and Appellant.

No. 981726.

Supreme Court of Utah.

Jan. 14, 2000.

Jan Graham, Att'y Gen., J. Frederic Voros, Jr., Christine Soltis, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

Ronald J. Yengich, Vanessa Ramos–Smith, Salt Lake City, for defendant.

ZIMMERMAN, Justice:

¶ 1 William Jesse Loose ("Loose") appeals his conviction on two counts of sodomy on a child and two counts of sexual abuse of a child. Loose raises several arguments on appeal. He argues that the trial court erred by denying him a new trial based on: (i) the admission of improper hearsay and profile evidence offered by a therapist who had treated the victim, J.J.; (ii) the admission of hearsay evidence offered by J.J.; (iii) the exclusion of relevant defense evidence concerning the relationship between Loose and his wife; and (iv) the discovery after trial of new evidence. Finally, Loose argues that he received ineffective assistance of counsel. We affirm.

¶ 2 We view the facts in the light most favorable to the jury verdict and recite them accordingly. See State v. Brown, 948 P.2d 337, 339 (Utah 1997). On four different occasions in 1995, Loose sexually abused his stepdaughter, J.J. In August of 1996, a year after the final incident of abuse, J.J.'s mother, Carol Correna Loose ("Corey"), took J.J. to see a social worker, Joe Tabish. Corey told Tabish that J.J. had been exhibiting unusual behaviors, including excessive hand washing, withdrawal from peers, decreased school performance, and anorexic tendencies. Corey also mentioned to Tabish that J.J. had been sexually abused by her biological father.

¶ 3 Tabish began by asking J.J. about the abuse she suffered at the hands of her biological father. He then asked if she had been abused by anyone else. She responded with a shocked look and then answered affirmatively. She indicated that it was "Jesse," the defendant, who had abused her. Tabish disclosed this information to Corey, who, upon hearing the accusation, was "hysterical, incredibly emotional, [and in a] state of denial." That evening, Corey separated from Loose and moved herself and her children from their home.

¶ 4 Loose was bound over for trial. The State requested a hearing pursuant to section 76–5–411 of the Utah Code to determine if Tabish should be allowed to testify regarding J.J.'s initial disclosures to him, despite their being hearsay. The court found that Tabish should be allowed to testify. It did not rely on section 76–5–411, however. It held that Tabish's recitation of the statements J.J. made to him was admissible nonhearsay. The court found that "[t]he State is offering them not to prove the truth of the matter asserted therein, but to provide a framework. The statements are essential for the jury to understand how these allegations against the Defendant arose.... Allowing Mr. Tabish to [testify] ... is important in

allowing the State to present a cohesive case."

¶ 5 The case proceeded to trial. J.J. was the State's first witness. She testified regarding the incidents of abuse discussed above. On cross-examination, Loose's attorney introduced excerpts of a letter that J.J. had written before trial regarding these incidents in order to show inconsistencies between the written statement and J.J.'s trial testimony. On redirect, the State had J.J. read another portion of the letter. Loose's attorney objected to her reading from the letter, claiming that it was hearsay. The State responded that Loose opened the door to the reading by using it to impeach J.J. The court overruled the objection.

¶ 6 The next witness called by the State was Tabish. Tabish's testimony included the statements made by J.J. during their first meeting. The prosecutor asked him if the behaviors J.J. exhibited were "consistent with children who may have been sexually abused." Loose's attorney objected to this question. The objection was sustained. The prosecutor then asked whether Tabish had seen such behaviors in other children who had been sexually abused. Tabish answered affirmatively. Later, the prosecutor asked Tabish if it is "common for ... children to disclose every detail [of sexual abuse] during the first disclosure." Tabish responded negatively. Loose's attorney objected to the line of questioning, and the trial court sustained the objection. Loose's attorney never asked to have Tabish's response stricken from the record.

¶ 7 The jury found Loose guilty of all four counts. Loose then moved for a new trial based on claims of trial error. After Loose had filed the motion, he learned of a letter which J.J. had written to a friend after the trial in which she stated that she had lied while testifying. Loose filed a supplemental motion for a new trial based on that letter claiming it to be newly discovered evidence.

The trial court denied the motion for a new trial based on the arguments raised in the original motion. It then ordered a hearing to determine whether the newly discovered evidence would likely make a different result probable on retrial. Following the hearing, the trial court found that the letter was unlikely to bring about a more favorable result on retrial and denied the supplemental motion for a new trial.

¶ 8 On appeal, Loose argues that the trial court erred by failing to grant a new trial on any of several grounds. We first state the standard of review: we review the decision to grant or deny a motion for a new trial only for an abuse of discretion. *See State v. Martin*, 984 P.2d 975, 977 ¶ 5 (Utah 1999) (citing *Crookston v. Fire Ins. Exch.*, 860 P.2d 937, 938 (Utah 1993)). Any legal determinations made by the trial court as a basis for its denial of a new trial motion are reviewed for correctness. *See Crookston*, 860 P.2d at 938.

¶ 9 First, Loose argues that the erroneous admission of Tabish's testimony warrants a new trial. Loose challenges two aspects of Tabish's testimony. First, he contends that the recitation of what J.J. told Tabish in their first encounter was inadmissible hearsay because it did not qualify under section 76–5–411 of the Code. And as for Tabish's testimony about the characteristics of other abused children, Loose asserts that it was improper profile evidence offered to bolster J.J.'s credibility.

¶ 10 We reject the first contention. We agree with the trial court that Tabish's testimony was not admitted based on an exception to the hearsay rule contained in section 76–5–411 of the Code. Rather, the statements offered by Tabish were not hearsay because they were not offered for the truth of the matter asserted. Therefore, section 76–5–411 has no application.[1]

---

1. The dissent asserts that Tabish's testimony regarding what J.J. told him at their first meeting was hearsay and could only have been properly admitted if it met the requirements of section 76–5–411. Even if the dissent were correct in this assertion, it would not result in a reversal because the admission of the evidence was harm-less. We do not reverse a trial court for committing harmless error. *See Hall v. NACM Intermountain, Inc.*, 988 P.2d 942, 947 ¶ 21 (Utah 1999).

An error is harmless when it is " 'sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the

¶ 11 We also reject the challenge to the so-called "profile testimony." In *State v. Kallin*, 877 P.2d 138, 141 (Utah 1994), this court held admissible properly founded expert testimony that is limited to the statement that a particular child's behavior is "consistent with" symptoms that might be exhibited by one who was sexually abused. *See id.* We distinguished this testimony from that purporting to be based on a psychological profile of an abuse victim. *See id.* Here, Tabish testified based on his experience, not based on sexual abuse profiles, and as in *Kallin*, he did not testify that the symptoms exhibited by the child demonstrated that she was sexually abused. Rather, he said only that he had seen some of the behaviors he saw in J.J. in other children who had been sexually abused. Therefore, the trial court did not err in allowing Tabish to testify. It follows that the trial court properly denied the motion for a new trial grounded on these challenges.

¶ 12 Loose next argues that the trial court erred by denying his new trial motion to the extent it was based on the fact that J.J. read portions of a written statement she had prepared earlier. Loose argues that the statement was hearsay. In denying the motion for a new trial, the court held that the written statement was admissible non-hearsay. We agree.

¶ 13 Rule 801 provides:

(c) *Hearsay.* "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

(d) *Statements which are not hearsay.* A statement is not hearsay if:

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statements and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication. ...

Utah R. Evid. 801(c), (d)(1)(B). J.J.'s statement falls within the description of a statement which is not hearsay. On redirect, the State had J.J. read portions of the statement in order to show that they were indeed consistent with her trial testimony. As we said in *State v. Sibert*, 6 Utah 2d 198, 203, 310 P.2d 388, 392 (1957), "When evidence of inconsistent statements has been introduced, or insinuations made by cross-examination that such inconsistent statements were ut-

---

outcome of the proceedings.' " *State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992) (quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989)); *see also Cheves v. Williams*, 377 Utah Adv. Rep. 12, 17 ¶ 37 (Utah 1999). Here, our confidence in the outcome is not undermined even if we assume Tabish's testimony was improper.

Tabish's recitation of the circumstances surrounding J.J.'s initial statement implicating Loose did not prejudice him because other evidence in the case was convincing on the question of guilt. A case squarely on point is *State v. Seale*, 853 P.2d 862, 875 (Utah 1993). The facts in the present case are quite similar to the facts of *Seale*. There, two children made claims of having been sexually abused to an adult. The adult was allowed to testify, over hearsay objections, to what the children had reported. On appeal, we stated that even if we were to find the adult's testimony repeating the children's statements improperly admitted, we would affirm, because any such error was harmless. In making the harmlessness determination, the critical issue was the importance of the adult's testimony in light of the other available evidence. In *Seale*, the other evidence was as follows: one child testified on the stand "at length and in detail

about the ... incidents" of abuse; there was also some physical evidence supporting that child's assertions, however, there were no corroborating witnesses. *See id.* at 874–75. On the stand, the other child neither claimed that she had been abused nor denied being abused. However, in an admissible videotape, she described the abuse. There was no physical evidence corroborating her claims of abuse and there were no corroborating witnesses. *See id.*

In the present case, J.J. described the abuse at length and in detail on the stand. In addition, a letter that J.J. had written in therapy before trial describing the incidents of abuse was admitted. And, an expert properly testified that J.J.'s behavior was similar to the behavior of other children the expert had seen who had been sexually abused. Comparing these facts with those in *Seale*, we conclude that the properly admitted evidence of guilt here is stronger than the evidence of abuse of the second child in *Seale*. We found any error in *Seale* harmless; similarly, we conclude that any error that the trial court committed in admitting Tabish's recitation of J.J.'s remarks was harmless. *See Seale*, 853 P.2d at 875 (citing *Hamilton*, 827 P.2d at 240).

tered, it comports with reason and experience to admit prior consistent statements to rebut any inference that the witness was telling a recently fabricated story." The trial court did not err in refusing to grant a new trial based on this claim.

¶ 14 Loose's third argument is that the trial court erred in refusing to grant him a new trial based on its erroneous refusal to allow defense evidence regarding the poor state of Corey and Loose's marriage. Corey testified against Loose. The defense offered the testimony of Debbie Young, a family friend, to the effect that Corey had told her that the relationship was poor. The defense maintained that this evidence was relevant to Corey's credibility. The court denied the new trial, finding that it had properly excluded the evidence because whatever relevance and probative value it had was substantially outweighed by its potential for unfair prejudice, relying on rule 403 of the Utah Rules of Evidence.[2] While a correct legal standard, it is not clear from an examination of the record that this was the actual reason that the evidence was excluded during the trial. But even if the trial court's analysis in ruling on the motion for a new trial was flawed, we can sustain its result on alternative grounds. *See State v. Pearson,* 943 P.2d 1347, 1353 (Utah 1997) ("[T]his court will 'sustain a trial court's evidentiary ruling on any available ground, even though it may be one not advanced below.' ") (quoting *State v. Rimmasch,* 775 P.2d 388, 400 (Utah 1989)); *see also In re Estate of Shepley,* 645 P.2d 605, 607 (Utah 1982) (stating court's duty to sustain trial court's order on any proper grounds).

■ ¶ 15 At trial, when Loose's attorney sought to introduce the marital relationship evidence, the State objected on grounds of unresponsiveness and hearsay. The trial court sustained the objections. We conclude that those rulings were correct. Young's answers to defense counsel's questions were rambling and not responsive to the questions being asked. *See State v. Lack,* 118 Utah 128, 221 P.2d 852, 857 (1950) ("[The trial judge] has a duty to see to it that witnesses

... shall answer proper questions fairly and responsively and not wilfully digress from the subject of the examination."). One question Loose's attorney asked would have required Young to testify as to what Corey said to her about Corey's relationship with Loose. This is hearsay and was properly excluded. *See* Utah R. Evid. 801 (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Utah R. Evid. 802 ("Hearsay is not admissible except as provided by law or by these rules."). Because we find no error in the rulings at trial, the trial court properly denied the motion for a new trial.

■ ¶ 16 Loose's fourth argument is that the court erred in denying his motion for a new trial based on the letter written by J.J. after the trial, in which J.J. said that she had lied on the stand. Loose argues that a new trial should have been granted because that letter constituted newly discovered evidence. We review the denial of a motion for a new trial based on newly discovered evidence on the same basis as any other denial of a new trial motion—whether the trial court abused its discretion. *See State v. James,* 819 P.2d 781, 793 (Utah 1991). The legal elements for analyzing a claim for a new trial based on newly discovered evidence are as follows: the moving party must demonstrate from the proffered evidence that: "(i) it could not, with reasonable diligence, have been discovered and produced at the trial; (ii) it is not merely cumulative; and (iii) it must make a different result probable on retrial." *Martin,* 984 P.2d at 977 ¶ 5 (citing *James,* 819 P.2d at 793). The trial court found that the first and second requirements satisfied, and the State does not contest this finding. The critical issue, therefore, is whether the third element was satisfied: was "a different result probable on retrial" if the evidence had been sent to a jury?

¶ 17 The trial court held an evidentiary hearing on this issue. J.J. was examined by the State and cross-examined at length by Loose's attorney. At the hearing, J.J. reso-

---

2. Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substan-

tially outweighed by the danger of unfair prejudice." Utah R. Evid. 403.

lutely maintained that the recantation in the letter was false, and that her trial testimony was true. She testified that she had written the recantation in an effort to cause problems for her mother because the two were not getting along. The court then found that the recantation in the letter was not truthful but was intended to "cause trouble for [J.J.'s] mother and facilitate her attempt to avoid living with her mother because of difficulties and problems unrelated to this case." Based on this finding, the trial court concluded that the new evidence "does not render a different result probable." The critical issue before us is the trial court's resolution of the truthfulness of the recantation as a predicate for denying the new trial motion.

¶ 18    The Utah Court of Appeals recently addressed a case similar to this. In *Matthews v. Galetka*, 958 P.2d 949 (Utah Ct.App.1998), it noted that a majority of states that have considered recanted testimony "have given great latitude to the trial judge to determine the credibility of the recanting witnesses' testimony." *Id.* at 952. We are not comfortable with the court of appeals' broad characterization of the cited case law, or the sweeping discretion it purports to give trial judges in determining witness credibility, even in the new trial context. We proceed with caution where a trial judge's weighing of credibility has the result of keeping otherwise admissible evidence from the jury. However, we conclude that it is appropriate in the context of a new trial motion based on newly discovered evidence to give the trial court the power to consider the testimony's probable weight as part of its determination as to whether that testimony would "make a different result probable on retrial." And part of that weight certainly is the likelihood that a jury would find it credible. Probable credibility alone is not the determinative issue, but its interplay with the substance of the proffered testimony and with the other evidence offered at the first trial is. Therefore, at least in a case such as the one before us where the witness would not recant under oath, maintained that her trial testimony was true and that the recantation was false, and gave a cogent explanation for the recantation, we find that there was no abuse of discretion in concluding that

the evidence, considered in light of all other factors, would not have changed the result on retrial.

¶ 19    Finally, Loose argues that he received ineffective assistance of counsel because his lawyer failed to object to the admission of Tabish's testimony regarding the statements J.J. made at their first meeting. He argues that because Tabish's testimony did not qualify under section 76–5–411, his counsel was ineffective in failing to object to the admission of this testimony. Because Tabish's testimony was not admitted under section 76–5–411, we find that Loose's attorney was not ineffective for failing to object on the basis of a violation of section 76–5–411. Therefore, this argument is without merit.

¶ 20    We affirm.

¶ 21    Associate Chief Justice DURHAM and Justice RUSSON concur in Justice ZIMMERMAN's opinion.

ANDERSON, District Judge, concurring:

¶ 22    I concur in the affirmance of defendant's conviction. However, I do not agree with the dicta expressing discomfort with according trial judges "great latitude to determine the credibility of recanting witnesses' testimony." *See supra* ¶ 18.

¶ 23    Trial judges who have heard both versions of the witnesses' testimony, as well as all other trial testimony, are in an excellent position to evaluate whether the supposed recantation is true. If a supposed recantation is obviously false to the trial judge, I question whether justice is served by evaluating whether a jury is likely to be misled by the false testimony. There are valid arguments on both sides of this issue that ought to be considered if and when a case is presented where the trial judge finds the recantation false, but it is also evident that the supposed recantation probably would change the verdict.

HOWE, Chief Justice, dissenting:

¶ 24    I dissent. The trial court erred in allowing Tabish to testify that J.J. told him that the defendant had abused her. It was

hearsay and could have been admitted only in compliance with section 76–5–411 or some other valid ground.

¶ 25    The trial court admitted the hearsay statements of Tabish on the ground that they were not hearsay because

[T]he State is offering them not to prove the truth of the matter asserted therein, but to provide a framework. The statements are essential for the jury to understand how these allegations against the Defendant arose. There is a significant amount of time between the dates of the alleged offenses and the date the Defendant was charged with the crimes. Allowing Mr. Tabish to explain how he became aware of the alleged abuse through the therapy sessions for other problems the victim experience[d] is important in allowing the State to present a cohesive case.

¶ 26    I do not agree that hearsay evidence can be admitted to "provide a framework" and that the evidence then becomes non-hearsay. No authority is cited for that proposition by the trial court or the majority opinion. While hearsay can be admitted in limited situations where it is not admitted to provide the truth of the matter asserted, the situation in the instant case does not qualify for that exception. It clearly came into evidence as proof that the defendant abused J.J. The jury was not instructed that it could not consider the disclosure to Tabish as evidence of abuse.

¶ 27    The majority opines that even if the admission of Tabish's testimony as to what J.J. related to him was erroneous, it was harmless error, relying on *State v. Seale.*  In *Seale,* there was physical evidence of abuse and the testimony of a corroborating witness. In the instant case, there is no physical evidence of abuse and no corroborating witness. J.J. admitted that not everything she wrote in the 1997 letter was true, and following the trial she recanted her testimony in another letter. Thus this case is very much "her word against his." I cannot agree that any error was harmless under this state of the evidence. I would reverse the conviction and grant a new trial.

¶ 28    I concur in the observations of Judge Anderson in his concurring opinion regarding the recantation of testimony.

¶ 29    Having disqualified himself, Justice STEWART does not participate herein; District Judge LYLE R. ANDERSON sat.