2021 UT App 49

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LLOYD L. STRAYER,
Appellant.

Opinion
No. 20191060-CA
Filed April 29, 2021

Third District Court, Salt Lake Department
The Honorable Heather Brereton
No. 181912610

Matthew R. Cloward, Attorney for Appellant

Simarjit S. Gill and Clint T. Heiner,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

MORTENSEN, Judge:

¶1      After Lloyd L. Strayer grabbed the breast of another resident (Neighbor) in a common room of their apartment complex, a jury convicted him of sexual battery. Strayer moved for a new trial on the ground of newly discovered evidence: the testimony of another resident who purportedly was present during, but did not see, the incident. The trial court denied the motion after finding that Strayer failed to demonstrate any of the

three elements required for a new trial. Strayer appeals the trial court's denial of his motion. We affirm.[1]

¶2     In February 2018, Neighbor entered a common room of her apartment complex for what was, unbeknownst to her, a surprise birthday party in celebration of her ninetieth birthday. Strayer was one of a handful of residents waiting in the common room. As Neighbor walked past him to speak with her daughter, Strayer grabbed Neighbor's breast.[2]

¶3     Strayer was charged with sexual battery under Utah Code section 76-9-702.1(1) (LexisNexis 2017), which criminalizes, in relevant part, "intentionally touch[ing], whether or not through clothing, . . . the breast of a female person." The case proceeded to trial, where Strayer maintained that he accidentally touched Neighbor's breast. Neighbor and her daughter testified about their observations and ultimate beliefs that Strayer intentionally grabbed Neighbor's breast. None of the other witnesses who testified were actually present in the common room when the

---

1. Because we agree with the trial court that Strayer failed to demonstrate the requirement that the evidence "could not[,] with reasonable diligence[,] have been discovered and produced at the trial," *see State v. James*, 819 P.2d 781, 793 (Utah 1991) (cleaned up), we do not need to address either of the remaining two requirements that the defendant is required to show when moving for a new trial based on newly discovered evidence, *see State v. Goddard*, 871 P.2d 540, 545 (Utah 1994) ("All three . . . criteria must be met."). As a result, to the extent possible, we limit our discussion to this requirement.

2. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only when necessary to understand issues raised on appeal." *State v. Cruz*, 2020 UT App 157, n.1, 478 P.3d 631 (cleaned up).

conduct occurred.[3] After hearing all the evidence, the jury found Strayer guilty.

¶4    Strayer later moved for a new trial based on what he described as "newly discovered exculpatory evidence." Specifically, this purportedly new evidence was the testimony of another resident, S.I., who claimed that she was in the common room during the incident and that "her perception of the events was that the contact was not intentional."

¶5    However, S.I. had been in contact with Strayer and his defense team well before the trial. Specifically, S.I. wrote a letter and provided it to Strayer months before trial so that he could give it to his defense counsel (Counsel). S.I. and three other residents of the building signed the letter, in which they indicated that they believed Strayer's version of events. But more importantly, a few weeks after this—and still months before trial—S.I. spotted Strayer's investigator in the lobby of the apartment building, and she asked the investigator to "come see [her]" and "gave them [her] apartment number," but the investigator never spoke to her.

¶6    Nevertheless, in support of his motion, Strayer argued that S.I.'s testimony could not have been discovered with reasonable diligence. To this end, Counsel explained that,

---

3. Strayer did not testify on his own behalf. However, at trial, a detective recounted Strayer's police interview and relayed Strayer's version of the story. During this interview, Strayer apparently volunteered that "he was a little more frisky than he should have been" and stated that "he gave [Neighbor] a kiss on the cheek" and "tried to give her a kiss on the lips." With that said, he claimed that touching Neighbor's breast was simply an accident, and that it happened as he "reached his right arm back at about the same time [she] was passing behind him and that his hand had hit [her] breast."

because he "received numerous letters" from residents of the apartment building, it made sense to interview only those residents who "appeared to be," based on the content of those letters, present during the event. And because "the letter from [S.I.] . . . did not indicate that she had been present" for the event, Counsel argued that speaking with her would essentially have required Strayer to interview "everyone from his apartment" and that it would be "unreasonable to expect that due diligence would require" these efforts.

¶7 As the trial court correctly observed, to obtain a new trial based on newly discovered evidence, "the moving party must demonstrate from the proffered evidence that: (i) it could not, with reasonable diligence, have been discovered and produced at the trial; (ii) it is not merely cumulative; and (iii) it . . . make[s] a different result probable on retrial." *State v. Loose*, 2000 UT 11, ¶ 16, 994 P.2d 1237 (cleaned up). The trial court denied Strayer's motion, reasoning that—based on S.I.'s communication with Strayer's investigator—Strayer failed to demonstrate that S.I.'s testimony could not have been discovered with reasonable diligence. Specifically, the trial court stated, "[T]his new potential witness indicates that she had some communication with [Strayer's] investigator prior to trial. The fact that—that wasn't followed up with . . . I think, doesn't make it new evidence. I specifically find that there has not been a showing that this evidence couldn't be discovered with reasonable diligence."

¶8 On appeal, Strayer must demonstrate that the trial court clearly abused its discretion in denying his motion for a new trial. *See State v. Martin*, 2002 UT 34, ¶ 45, 44 P.3d 805. "A trial court abuses its discretion if its decision is premised on flawed legal conclusions, if the trial court's decision was beyond the limits of reasonability, if the trial court's actions are inherently unfair, or if we conclude that no reasonable person would take the view adopted by the trial court." *State v. Boyer*, 2020 UT App 23, ¶ 18, 460 P.3d 569 (cleaned up).

¶9 Strayer does little to address the basis of the trial court's ruling: S.I.'s pre-trial contact with Strayer's investigator. Strayer seems only to imply that his investigator was busy interviewing other residents who had previously given an express indication that they were present during the incident, and thus it would have been unreasonable for the investigator to divert attention away from these other residents to interview S.I. Based on this, he likens his case to *State v. James*, 819 P.2d 781 (Utah 1991), where our supreme court found that the reasonable diligence requirement was demonstrated because the record showed that "defense counsel . . . would have had to obtain the names of and interview between fifty and one hundred prisoners during the two-week period prior to the trial" to discover the evidence at issue. *See id.* at 794. Specifically, Strayer asserts that, "[l]ike in *James*, [he] would have had to interview many residents of the apartment complex to have produced [S.I.'s] testimony at trial."

¶10 But Strayer essentially admits that there is nothing in the record to substantiate his arguments. Indeed, he explicitly acknowledges that "[t]here is nothing in the record to indicate how many other individuals the investigator spoke with while looking for individuals that had provided information relevant to the event," or even to indicate "how many residents lived at the apartments."[4] As a result, Strayer necessarily fails to demonstrate that the trial court abused its discretion in denying his motion. *See* Utah R. Crim. P. 24(b) ("A motion for a new trial . . . shall be accompanied by affidavits or evidence of the

---

4. Moreover, Strayer's entire argument seems to be predicated on the notion that, because Counsel received an allegedly voluminous number of letters of support, a reasonably diligent investigation would not have involved speaking with S.I. given that her letter never mentioned that she was present for the incident. But again, Strayer explicitly acknowledges that "[t]here is nothing in the record as to how many letters were provided."

essential facts in support of the motion."); *State v. Hawkins*, 2016 UT App 9, ¶ 63, 366 P.3d 884 ("The appellant bears the burden of identifying the parts of the record that he claims demonstrate trial court error."). For related reasons, we see no useful parallels between this case and *James*. In contrast to the "difficulties inherent in obtaining" the evidence in *James*, interviewing a single witness who lived in Strayer's building and asked to speak with his investigator months before trial hardly seems "an insurmountable task."[5] *See James*, 819 P.2d at 794.

¶11    Affirmed.

———————

5. Additionally, *James* concerned the testimony of another inmate (Kenneth Lisner) who claimed that "a key witness for the prosecution" (Ronald Peterson) told Lisner that he "fabricated his testimony at trial . . . to get better treatment . . . at his own criminal trial." *State v. James*, 819 P.2d 781, 793 (Utah 1991). Not only did this conversation happen "about two weeks before trial," but there is no indication that James ever knew of the conversation until Lisner told him about it "well after the trial." *Id.* at 793–94. Thus, before the trial, neither James nor his counsel had any reason to interview Lisner, or to otherwise ferret out a statement that they had no knowledge of. In contrast, Strayer had every reason to ask the other residents of his apartment whether they had been present for the incident and, if so, to ask what they saw. Indeed, if S.I.'s testimony is to be believed, Strayer should have easily been able to identify potential witnesses. S.I. claims that, after Strayer made contact with Neighbor's breast, Strayer stayed for the duration of the celebration, "[a]bout 45 minutes maybe," and "had cake" with everyone—and this all occurred in a room that could fit, at most, approximately fifteen people in it. To be frank, this is a far cry from the peculiar circumstances in *James*.