STATE of Utah, Plaintiff and Appellee,

v.

James KALLIN, Defendant
and Appellant.

No. 920560.

Supreme Court of Utah.

June 22, 1994.

R. Paul Van Dam, Atty. Gen., Kris Leonard, Asst. Atty. Gen., Salt Lake City, for plaintiff.

Wayne B. Watson, Thomas J. Scribner, Provo, for defendant.

STEWART, Associate Chief Justice:

A jury convicted James Kallin of rape of a child, a first degree felony, and the trial court sentenced Kallin to a prison term of five years to life. On appeal, Kallin asserts that this Court should reverse his conviction because the trial court erred in five evidentiary rulings: (1) the State's expert witness was allowed to affirm the credibility of the victim; (2) the expert was permitted to testify, in effect, that the victim fit the profile of a sexually abused child; (3) the defendant was prohibited from eliciting expert testimony that defendant was not a pedophile; (4) the State was allowed to adduce inculpatory testimony from a witness that was inconsistent with a pretrial summary of the witness's testimony given defense counsel by the State; and (5) the State was allowed to ask the victim unduly leading questions. We affirm.

In February 1992, the victim attended a maturation class at her elementary school designed to educate young girls about their natural development. That night, Angelique Allphin, a classmate of the victim, related to her mother a conversation she had earlier in the day with the victim. According to Angelique, the victim said that she was afraid that she might get pregnant because of the things her dad was doing to her. Ms. Allphin reported this conversation to her Relief Society president and her bishop.[1] The next day, Angelique told her mother that she had made

---

1. Ms. Allphin is a member of the Church of Jesus Christ of Latter-day Saints (LDS Church). The LDS Church is divided into geographical congregations called "wards." A bishop is the presiding spiritual leader of the ward. The Relief Society, or women's auxiliary of the ward, is presided over by the Relief Society president.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■

a mistake and that it was the victim's grandfather, not her father, who was doing things to her. Ms. Allphin reported this change in Angelique's story to her bishop and Relief Society president.

Subsequently, the Division of Family Services (DFS) was notified that the victim might have been sexually molested by her father. The report prompted an investigation by a DFS case worker, Phyllis Bushman, and Detective Bruce Wilkins of the Orem City Police Department. On the morning of February 12, 1993, Bushman and Wilkins interviewed the victim at school. During the interview, Wilkins told the victim that he had been informed that she had told someone her father had sex with her and that she was afraid she might be pregnant. The victim denied saying that her father had sex with her and stated that no one else had done anything to her.

The following day, Bushman told the victim's mother about the interview and the reports of the alleged sexual abuse. The victim's mother immediately picked the victim up from school. On the way home, the mother asked her daughter why she had not told her about the interview. When they returned home, the victim's mother and stepfather talked with the victim about Bushman's report. The mother repeatedly asked the victim to tell her if something had happened, and the victim repeatedly replied, "I didn't say it was my daddy."

Later that day, the victim told her mother and the investigators that one night when she had slept over at her grandparents' home, James Kallin, her stepgrandfather, had intercourse with her. He warned her not to tell anyone what happened. Kallin was arrested and charged with rape of a child and was convicted on November 5, 1992.

## I. EXPERT TESTIMONY AS TO CREDIBILITY OF VICTIM

The State's expert witness, Dr. Karen Hansen, a pediatrician, examined the victim shortly after the sexual encounter. The prosecution asked Dr. Hansen what conclusions she drew from that examination. Dr. Hansen replied that the victim had trauma in the genital area consistent with sexual intercourse, but did not testify that the victim was actually abused. Dr. Hansen also related what the victim told her concerning the alleged rape and who had done it.

■■■■■ Defendant asserts that the account communicated by the victim to Dr. Hansen was "related to the jury [by Dr. Hansen] in such a manner as to assume the victim's truthfulness and that the testimony therefore improperly attested to the victim's veracity" in violation of Rule 608(a)(1) of the Utah Rules of Evidence [2] and the ruling in *State v. Rimmasch*, 775 P.2d 388 (Utah 1989).

*Rimmasch* held that an expert may not testify that what a witness told the expert was the truth, and specifically that the story of an alleged victim in a child abuse case was true. 775 P.2d at 392. The Court ruled that such evidence violated Rule 608(a) of the Utah Rules of Evidence. The Court also held inadmissible an expert opinion that an alleged child abuse victim had been abused if the opinion was based, even in part, on conformance of a victim's behavior to a child sexual abuse profile if there was no scientific evidence establishing the scientific accuracy of the profile in identifying child sex abuse victims.[3] *Id.* at 390, 393; *see also Kofford v. Flora*, 744 P.2d 1343, 1347–48 (Utah 1987); *Phillips v. Jackson*, 615 P.2d 1228, 1233–34 (Utah 1980). *Rimmasch* also held that an

---

2. Rule 608(a) of the Utah Rules of Evidence provides:

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

3. Rule 702 of the Utah Rules of Evidence states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

expert could not base testimony that a child had been sexually abused on the expert's acceptance of the victim's story as a truthful account.

Unlike the expert testimony held inadmissible in *Rimmasch*, Dr. Hansen did not testify that the victim was abused, nor did she base her opinions on her acceptance of the victim's story as true. Defendant argues that the victim's story, recounted by Dr. Hansen to the jury, substantiated the credibility of the victim's testimony, even though Dr. Hansen did not testify either to the credibility of the victim or to the truthfulness of her story. We do not decide whether the holding in *Rimmasch* can be stretched to such an extent. Defendant waived the issue of the admissibility of Dr. Hansen's testimony recounting the victim's story by not objecting to its admission. Utah R.Evid. 103(a); *State v. Emmett*, 839 P.2d 781, 783–84 (Utah 1992). Defendant does not claim plain error as an excuse for his failure to object to the testimony. Nevertheless, having reviewed the record, we are convinced that the admission of the testimony was not clear or manifest error.

■ Defendant also asserts that Dr. Hansen improperly testified that the victim fit the profile of a sexually abused child. In *Rimmasch*, experts testified that the victim had in fact been sexually abused, and their testimony was based in part on the victim's conformance with a sexual abuse profile. 775 P.2d at 390, 393.

Dr. Hansen testified only that the victim's behavior was consistent with symptoms that might be exhibited by one who had been sexually abused. That behavior included sleeplessness, poor appetite, fear of the victim's grandfather, clinging to her mother, and a urination accident. Dr. Hansen did not, however, testify to any kind of sexual abuse profile as such, nor did she testify that the symptoms manifested by the victim demonstrated that she had been sexually abused. She likewise did not testify that all sexually abused children exhibit fixed psychological or physical symptoms not otherwise present in children who have not been abused. Rather, her testimony was limited to the conclusion that the victim's symptoms were "consistent with" sexual abuse. On cross-examination, she also testified that the victim's symptoms were consistent with causes other than sexual abuse, such as other psychological trauma or the victim's recent withdrawal from the prescription drug Ritalin.

■ Evidence that an alleged victim manifests certain physical symptoms that are consistent with sexual abuse is not based on a psychological sexual abuse profile. The foundation for such testimony is based on the experience and observations of those who work with abused children. Evidence that certain behavioral symptoms are consistent with sexual abuse does not prove directly the ultimate legal conclusion that the child was abused, and cannot be admitted for that purpose. As Dr. Hansen made clear on cross-examination, such symptoms are also consistent with a number of causes other than sexual abuse.

Nevertheless, the manifestation of certain behavioral symptoms may have some probative value as circumstantial evidence. The probative value of such evidence is usually beyond the ken of a jury. Expert testimony that such symptoms are consistent with sexual abuse, subject to appropriate limitations and instructions to the jury, may enable the jury to assess the probative relevance of the evidence in light of all other evidence. If the relevance of such evidence is challenged, the trial judge must make an appropriate ruling with respect to its relevance in each case under Rule 402 of the Utah Rules of Evidence.

In sum, Dr. Hansen's testimony was not inconsistent with *Rimmasch*. She did not testify that the victim had in fact been sexually abused or raped, and she did not rely on a "psychological profile."

## II. ADMISSIBILITY OF EVIDENCE OF NONPEDOPHILIA

■ Defendant argues that the trial court erred in refusing to allow his expert, Dr. Patricia Smith, to testify that based on the psychological tests she had administered, defendant did not exhibit the symptoms of a pedophile. The trial judge made this ruling after a hearing outside the presence of the

jury in which Dr. Smith indicated what her testimony would be. Dr. Smith stated only that she could not recommend defendant for "treatment in the area of sexual deviancy" because he did not exhibit the "symptoms" of a sexual disorder called pedophilia.

The prosecution opposed Dr. Smith's testimony on the ground that defense counsel had failed to give the prosecution adequate notice of defendant's intent to call Dr. Smith to testify on that subject. The trial court had previously directed the parties to disclose to each other the expert witnesses each would call and the content of the testimony. Defense counsel failed to give notice to the prosecution that Dr. Smith would testify that defendant was not a pedophile. The trial court barred the evidence on the ground that it would have been unfair to the prosecution to admit the testimony because the prosecution did not have time to arrange for an expert rebuttal witness. Defense counsel had sufficient opportunity to give notice of the proposed testimony but failed to do so. The trial court carefully explored the issue with counsel and did not err in excluding the evidence.[4]

█ The trial court also ruled that Dr. Smith's reliance on a penile plethesmograph was not supported by evidence of reliability sufficient to warrant admission. Defense counsel offered no evidence in support of the reliability of that technique, and the trial court did not err in excluding the evidence. *See State v. Rimmasch,* 775 P.2d 388, 398 (Utah 1989); *Kofford v. Flora,* 744 P.2d 1343, 1347 (Utah 1987); *Phillips v. Jackson,* 615 P.2d 1228, 1234 (Utah 1980).

## III. PROSECUTION'S FAILURE TO DISCLOSE INCULPATORY EVIDENCE

█ Defendant next argues that the trial court erred in allowing two witnesses, Angelique and Ms. Allphin, to testify because their testimony did not conform to the testimony summaries provided by the prosecution prior to trial. The defense requested that the prosecution give "[t]he names and addresses of each of the witnesses the plaintiff intends to call at trial and a summary of the expected testimony of each such witness." At a pretrial conference, the prosecution responded with an oral summary of the testimony of its witnesses. Because the pretrial conferences were not transcribed, the trial court reconstructed the prosecutor's summary of the expected testimony of Angelique and Ms. Allphin as follows:

. . . .

2. The second of the young girl witnesses [Angelique Allphin] would testify that she heard the victim say that she hoped she was not pregnant for what had been done to her, but the girl couldn't remember whether the victim said the act had been perpetrated by her father or grandfather.

3. The mother of the second girl [Ms. Allphin] would testify that she reported the incident on the basis of her daughter's statement.

At trial, Ms. Allphin's testimony was somewhat different from the prosecution's summary. Ms. Allphin testified that Angelique initially told her that the victim had said her father had abused her, but that the next day, Angelique said she had made a mistake and it was the victim's grandfather who had abused the victim. Ms. Allphin then testified that she asked Angelique how she could have made such a mistake. Angelique answered that the victim had initially identified her grandfather as the abuser but Angelique had assumed that the victim meant her father because Angelique did not believe "grandpas did things like that." Defendant contends that the prosecutor misled defendant in a prejudicial manner by failing to correct the

---

4. In any event, it is not clear that Dr. Smith was prepared to testify that the defendant was not a pedophile. Dr. Smith testified *in camera:*

Q: [by the prosecutor] So, if you were asked what your opinion is, whether he is a pedophile or not, you can't give me an opinion on that?

A: All I can answer is does he show the symptoms of a sexual disorder called pedophilia based on [my] clinical evaluation of [the] individual.

Q: Well, let me ask you this. You haven't formed an opinion then as to whether he is a pedophile or not?

A: I can't answer that.

summary prior to trial and that the trial court erred in allowing Ms. Allphin and Angelique to testify because of the differences between the pretrial summary of their testimony and their actual testimony. Defendant asserts that the discrepancy between the summary and the trial testimony was prejudicial because the defense strategy was based on the theory that it was the victim's father who abused the child and that had the defendant known what Ms. Allphin and Angelique would say, he would have concentrated on other defenses.

■ In criminal prosecutions, the State has two independent obligations to provide evidence to the defense. First, the State has a duty under the Due Process Clause of the United States Constitution to provide, without request by the defendant, all exculpatory evidence. *State v. Worthen,* 765 P.2d 839, 850 (Utah 1988); *State v. Carter,* 707 P.2d 656, 662 (Utah 1985). Second, when required by court order, the State must disclose evidence pursuant to Rule 16 of the Utah Rules of Criminal Procedure. The practice in this state, at least in some districts, is for the prosecutors to make all inculpatory evidence available to the defense on request. *See* Utah R.Crim.P. 16(a)(3).

■ Whether prosecutors produce inculpatory evidence under court order or on request, they have a duty to comply fully and forthrightly. In *State v. Knight,* 734 P.2d 913, 916–17 (Utah 1987), this Court held that when the prosecution makes a voluntary disclosure of inculpatory evidence to a defendant, the prosecution must produce all the requested material or identify those portions not disclosed. If evidence is disclosed, the prosecutor has a continuing obligation to disclose newly acquired information so as to avoid misleading the defense. *See also Carter,* 707 P.2d at 662.

■ In ruling on a motion to exclude prosecution evidence because of a failure to make a full and accurate response to a defendant's request, a trial judge must consider and weigh a number of factors, such as (1) the extent to which the prosecution's representation is actually inaccurate, (2) the tendency of the omission or misstatement to lead defense counsel into tactics or strategy that could prejudice the outcome, (3) the culpability of the prosecutor in omitting pertinent information or misstating the facts, and (4) the extent to which appropriate defense investigation would have discovered the omitted or misstated evidence.

■ The prosecution has a duty to make a correct and complete disclosure, but defense counsel also has an affirmative duty to make a reasonable investigation.

Here, defense counsel asserts that he relied heavily on the prosecutor's statement that Ms. Allphin said Angelique could not remember whether the victim said that it was her father or grandfather who committed the act. Although the prosecutor's statement was incorrect and should have been corrected, it would not have been reasonable on the facts of this case to build a defense simply on one hearsay version of what the victim said. The critical evidence was the victim's own statement, not what a friend said the victim had said. The victim testified that she had never accused her father of abusing her, and several witnesses testified that the victim had only accused defendant.

In addition, the defense knew that the State planned to call Ms. Allphin and Angelique and therefore had a duty to interview them, especially if their testimony was considered critical to the defense. There is no evidence that they would not have talked to defense counsel. Furthermore, defense counsel must have known that other witnesses would testify that defendant was the offender.

Here, the prosecution should have corrected its misleading summary of testimony. Nevertheless, the trial court did not err in admitting Angelique's and Ms. Allphin's testimony. The witnesses could have been interviewed, and their testimony was consistent with other testimony, thereby rendering the Allphins' statements noncritical.

## IV. LEADING QUESTIONS

■ Finally, defendant asserts that the trial court abused its discretion in allowing the prosecutor to ask the victim too many

leading and suggestive questions on direct examination.

 A trial court has discretion in permitting leading questions on direct examination "as may be required to develop [the witness's] testimony." Utah R.Evid. 611(c). Leading questions may be necessary to develop the testimony of a child, especially one who is testifying about a sensitive and embarrassing subject. *State v. Ireland*, 773 P.2d 1375, 1377 (Utah 1989). Nevertheless, leading questions can be used, both inadvertently and intentionally, to shape and create evidence that conforms to the interrogator's version of the facts. For that reason, it is essential that trial judges exercise tight control over the use of leading questions in cases such as this to assure that they are used only after more open-ended questions have failed to produce responses. Highly suggestive questions that call only for "yes" or "no" answers should be used only when less suggestive questions are of no avail.

The use of leading questions to develop the victim's testimony in this case was appropriate. The victim was eleven years old and had a difficult time testifying. The court had to recess to allow her to compose herself, and she was in tears for most of the direct as well as cross-examination. Eventually, the victim was allowed to have an abuse coordinator sit with her so that she could complete her testimony. The trial judge remained in control of the interrogation. One of defendant's objections was sustained, and the question was rephrased, indicating that the trial court did not give the prosecutor license to testify for the witness. The prosecutor did not describe the alleged rape by leading questions, and although some of the questions asked were suggestive, the witness described the events in her own words. Under these circumstances, the leading questions were not inappropriate.

Affirmed.

ZIMMERMAN, C.J., and DURHAM, J., and BENCH, Court of Appeals Judge.

HOWE, J., concurs in the result.

HALL, J., did not participate herein; BENCH, Court of Appeals Judge, sat.