**2016 UT App 225**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JACOB LAWRENCE CHRISTENSEN,
Appellant.

Opinion
No. 20140720-CA
Filed November 10, 2016

First District Court, Logan Department
The Honorable Kevin K. Allen
No. 121100279

David M. Perry, Attorney for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1 Defendant Jacob Lawrence Christensen appeals his conviction for object rape, a first degree felony. He argues there were multiple instances of plain error and ineffective assistance of counsel during his trial. We affirm.

BACKGROUND[1]

¶2 Victim knew Defendant from middle school, but they lost touch when she moved out of state. Years later, after Victim returned to Utah to attend college, Defendant contacted her through social media and the two began to spend time together.

¶3 Although their relationship was not romantic, it began to get physical. Victim consented to some sexual touching; on one occasion she manually stimulated Defendant, and on another occasion she performed oral sex on him. In each case, after "only a couple of minutes" Victim began to feel uncomfortable, and she terminated the action before Defendant ejaculated. On other occasions, Defendant asked Victim to have sex with him, but she told him that she did not want to.

¶4 One night, Victim invited Defendant to her house. She and a roommate (Roommate) decided to take the drug Ambien in order to hallucinate, and Victim told Defendant of their plans. They wanted him to be with them in case one of them overdosed. Victim and Roommate picked up Defendant at his house, and he agreed to drive them home.

¶5 En route to Victim's house, Victim and Roommate each took three Ambien pills. Victim began feeling "a little bit dizzy" and Roommate began hallucinating and feeling "extremely ill." Upon arrival, Roommate vomited outside the car, and Victim vomited in the bathroom. Victim also began hallucinating; she

---

1. At trial, Defendant and Victim gave similar accounts, although the accounts differ on some key aspects. "[W]e view the evidence and all reasonable inferences in the light most favorable to [the jury] verdict and recite the facts accordingly. We include conflicting evidence as relevant and necessary to understand the issues on appeal." *State v. Dozah*, 2016 UT App 13, ¶ 2, 368 P.3d 863 (citations omitted).

hallucinated that people were coming into the living room, and she had Defendant and Roommate sit next to her to make space for them. Victim testified that the hallucination was more like a "lucid dream"; she "recognized that [she was] having a hallucination" and that "it was not reality."

¶6 At some point, Victim "blacked out." The next thing she remembered was being "flipped over" from her back onto her stomach and feeling "the sharpest pain that [she had] ever felt in [her] life through [her] rectum and up [her] spine." Victim "screamed" that it hurt, and then she felt what was "inside" of her "being removed." Victim was in her bedroom, but she could not recall how she got there. Defendant was behind her, and as she turned over, he came "back around back onto the bed." Victim had never had sex before; she "wasn't really positive what had happened" or what "steps [she] needed to take." She asked Defendant if she needed to get "Plan B," because she was worried she might get pregnant. She told Defendant that he had raped her.

¶7 Defendant denied he had raped her and told her she was being "over dramatic." He said there was no need to get "Plan B" because he had not ejaculated, and if she did get pregnant, she could just have an abortion. During their "confrontation" Victim saw Defendant writing on the chalkboard in her room, though she could not see what he was writing. Defendant then woke Roommate to borrow her car to drive himself home. Meanwhile, Victim showered because she felt "dirty" and "disgusting." After returning to her room, Victim noticed the writing on the chalkboard, which read, "Abortion," "Pro-choice," and "Fuck Dumb Bitches."

¶8 Victim woke Roommate in the early morning and disclosed that she had been raped. She left the house to stay with friends in another city, and was examined by a sexual assault nurse later that day. The examination revealed that Victim had six injuries: three lacerations to her labia majora and minora, two

lacerations in her anal area, and a scratch on her inner right thigh. The injuries were acute, meaning they had occurred in the last twenty-four to forty-eight hours. The hospital reported the assault to the police.

¶9     Victim never returned to her house—she gave up her scholarship, dropped out of school, and moved home to be with her parents. After the move, Victim could only sleep for a couple of hours at a time. She had anxiety. She "felt broken" and "couldn't be around other people." A year after the assault, she began to have flashbacks; memories from that night would "play over and over again in [her] mind."

¶10     In the course of their investigation, the police twice asked Victim to call Defendant. Both phone calls were recorded. In the first call, Victim confronted Defendant about what he had done, but he denied that anything happened. Victim persisted, asking him, "[W]hy did it hurt?" and saying, "I woke up in pain." Defendant told her, "[You] know I have hands right? . . . I have hands . . . ." In the second call, Defendant again denied that he raped her, saying, "[W]e didn't have sex," and that "rape is sex, period."

¶11     Defendant was charged with one count of rape and one count of sodomy, both first degree felonies. The Information also included an alternative charge of object rape, a first degree felony.

¶12     At trial, the State called multiple witnesses including Victim, Roommate, the investigating police officer, and the examination nurse. The State also called an expert witness, a clinical psychologist, who testified about the symptoms of post-traumatic stress disorder (PTSD) and opined that Victim exhibited some behaviors consistent with those symptoms. The State's expert did not testify that Victim suffered from PTSD or that the symptoms she experienced arose because she had been

sexually assaulted. Defendant called his own expert witness in clinical psychology.

¶13     Ultimately, the jury acquitted Defendant of the rape and sodomy charges, but found him guilty of object rape. Defendant appeals.

ISSUES AND STANDARDS OF REVIEW

¶14     Defendant raises three issues on appeal. He concedes that these issues were not preserved at trial, and asks us to review them for plain error and ineffective assistance of counsel. First, he contends the trial court plainly erred by allowing Victim to testify, arguing that she was incompetent to testify.[2] He also claims defense counsel was ineffective for not objecting to that testimony. Next, Defendant contends the court plainly erred by permitting the State's expert testimony on PTSD, and he again claims his counsel was ineffective for not objecting to it. Finally, Defendant contends that his counsel was ineffective with regard to his own expert's testimony.

¶15     To establish plain error, Defendant must show that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Griffin*, 2016 UT 33, ¶ 17 (citation and internal quotation marks omitted).

---

2. Defendant initially frames his argument as a sufficiency of the evidence issue. But Defendant only supports this argument by claiming that Victim's testimony was inadmissible because she was incompetent to testify. As we determine that the trial court did not err in admitting Victim's testimony, *see infra* ¶¶ 17–20, we find no reason to apply a sufficiency of the evidence analysis.

¶16 Claims of ineffective assistance of counsel raised for the first time on appeal are reviewed for correctness. *State v. Lucero*, 2014 UT 15, ¶11, 328 P.3d 841. To establish ineffective assistance of counsel, Defendant must show (1) that trial counsel rendered deficient performance, falling below an objective standard of reasonable professional judgment, and (2) that trial counsel's performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *accord State v. Bond*, 2015 UT 88, ¶ 14, 361 P.3d 104.

ANALYSIS

I. Victim Was Competent to Testify.

¶17 Defendant first contends Victim was incompetent to testify under rule 602 of the Utah Rules of Evidence. He argues the trial court plainly erred by allowing her testimony and trial counsel was ineffective for not objecting to it.

¶18 "Utah law imposes a very low bar for establishing the competency of a witness." *State v. Calliham*, 2002 UT 87, ¶ 22, 57 P.3d 220; *see also* Utah R. Evid. 601(a) ("Every person is competent to be a witness unless these rules provide otherwise."). Competency requires witnesses to have "personal knowledge of the matter," Utah R. Evid. 602, meaning witnesses must "have the opportunity and the capacity to perceive the events in question." *State v. Eldredge*, 773 P.2d 29, 33 (Utah 1989).

¶19 Defendant specifically claims Victim "rendered herself incapable to observe" the events because she was under the influence of Ambien, asserting Victim "'blacked out' and had no recollection as to what happened for significant stretches of time." But a witness is not rendered incompetent merely because her memory is "less than complete," *see id.*, or because she was intoxicated or otherwise impaired during the events in question, *see State v. Villarreal*, 857 P.2d 949, 956 (Utah Ct. App. 1993)

(concluding the victim was competent to testify even though she was intoxicated while she was sexually assaulted), *aff'd*, 889 P.2d 419 (Utah 1995).

¶20   Here, Victim had the opportunity and the capacity to perceive the events surrounding the assault, in particular the intense pain she felt in her rectum. Though she passed out while under the effects of Ambien, the pain of the experience brought her to consciousness. She had detailed memories of pain and other sensations, of seeing Defendant, and of conversing with him. Even though the effects of the drug may have rendered her memory incomplete, Victim was present, conscious at times, and able to remember the assault. She was thus competent to testify. She was also competent to testify to her experiences before and after the night of the assault. Thus, the trial court did not err in allowing her testimony.

¶21   "Once a witness is deemed competent, matters of credibility are best left to the jury." *Calliham*, 2002 UT 87, ¶ 23. Doubts about a witness's ability to testify accurately and truthfully can be investigated through cross-examination. *See id.* ¶ 24. Because Victim was competent to testify, trial counsel was not remiss for declining to object to the admission of her testimony. *See State v. Chacon*, 962 P.2d 48, 51 (Utah 1998) ("Neither speculative claims nor counsel's failure to make futile objections establishes ineffective assistance of counsel."). Furthermore, while cross-examining Victim, Defendant's counsel focused on her drug use, unconsciousness, and memory gaps, and thereby elicited favorable testimony for the defense. Counsel could have reasonably decided to refrain from objecting to Victim's testimony so as to discredit it during cross-examination. This is a "conceivable tactical basis for counsel's actions." *See State v. King*, 2012 UT App 203, ¶ 14, 283 P.3d 980 (citation and internal quotation marks omitted).

¶22   Because Defendant has not overcome "the strong presumption that 'under the circumstances the challenged action

might be considered sound trial strategy,'" Defendant has not shown that his counsel's performance was deficient. *See State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). Trial counsel thus did not render ineffective assistance. *See State v. Bair*, 2012 UT App 106, ¶ 49, 275 P.3d 1050 ("[B]ecause both deficiency and prejudice must be shown, a reviewing court can dispose of an ineffectiveness claim on either ground." (citation and internal quotation marks omitted)).

## II. The State's Expert Testimony Was Admissible.

¶23 Citing rule 403 of the Utah Rules of Evidence, Defendant contends the trial court plainly erred in admitting the State's expert testimony because it created unfair prejudice, confused the issues, and misled the jury. Defendant also contends, citing rule 702, that the testimony invaded the jury's province as fact finder.

¶24 An expert may testify if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Utah R. Evid. 702(a). A court may exclude an expert's testimony "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." *Id.* R. 403.

¶25 Defendant argues that the State's expert testimony was "clearly employed for the purpose of showing that a rape occurred" and was "likely to mislead the jury that a scientific judgment was made that something 'traumatic' had happened to [Victim]." He cites *State v. Rimmasch*, 775 P.2d 388 (Utah 1989), for the proposition that profile testimony, which "portrays the characteristics of the typical victim of sexual abuse," "has a tendency to mislead and confuse a finder of fact by suggesting that the issue to be decided is whether the accusing [victim] possesses these characteristics, rather than whether the [victim]

experienced the specific instances of abuse described." *Id.* at 402 n.13.[3]

¶26    In *Rimmasch*, experts testified that the victim had in fact been sexually assaulted, basing their conclusion largely on the victim's conformance to a psychological sexual abuse profile. *Id.* at 394–95. This testimony was inadmissible because there was no scientific evidence establishing the reliability of the profile or its ability to correctly identify sexual abuse victims. *Id.* at 399–404. While *Rimmasch* qualified the use of profile testimony, it did not altogether prohibit its use.[4]

¶27    *State v. Kallin*, 877 P.2d 138 (Utah 1994), clarified the use of similar testimony—under *Kallin*, experts may testify that a victim's behavior is consistent with sexual abuse without

---

3. Before rule 702 of the Utah Rules of Evidence was amended in 2007, *State v. Rimmasch*, 775 P.2d 388 (Utah 1989), was "the standard of determining the admissibility of technical or scientific expert testimony. . . ." *Eskelson ex rel. Eskelson v. Davis Hosp. & Med. Center*, 2010 UT 59, ¶ 10, 242 P.3d 762. The amendment to rule 702 was intended "'to clarify the requirements for admission' of expert testimony and subsume the *Rimmasch* standard into rule 702." *State v. Maestas*, 2012 UT 46, ¶ 121 n.134, 299 P.3d 892 (quoting *Eskelson*, 2010 UT 59, ¶ 11).

4. The court in *Rimmasch* did "not mean to imply that profile testimony is unreliable as a matter of law." *Rimmasch*, 775 P.2d at 403. Rather, the court determined that expert testimony that a child victim had been abused is inadmissible if the opinion is based on "conformance of a victim's behavior to a child sexual abuse profile if there was no scientific evidence establishing the scientific accuracy of the profile in identifying child sex abuse victims." *State v. Kallin*, 877 P.2d 138, 140 (Utah 1994); *Rimmasch*, 775 P.2d at 399–404.

running afoul of the holding in *Rimmasch*. "Evidence that certain behavioral symptoms are consistent with sexual abuse does not prove directly the ultimate legal conclusion that the [victim] was abused . . . ." *Kallin*, 877 P.2d at 141. While this evidence cannot be admitted for the purpose of proving the ultimate legal conclusion of abuse, it may "enable the jury to assess the probative relevance of the evidence in light of all other evidence." *Id.* In any event, such testimony is "not based on a psychological sexual abuse profile," but rather founded on "the experience and observations of those who work with abused [victims]." *Id.*

¶28　Similar to *Kallin*, the expert in this case testified that Victim's symptoms were consistent with PTSD. His testimony was not based on a psychological profile, and he did not testify as to the ultimate legal conclusion that Victim was sexually assaulted. Instead, the expert gave an overview of PTSD, explaining its progression and symptoms, and testified that according to Victim's testimony, "several things she described would be consistent with a description of post-traumatic stress disorder." The expert then explained that Victim's sleep patterns, her withdrawal, her flashbacks, and her fear were all consistent with PTSD symptoms. The expert acknowledged that Victim was not one of his patients and stated that his testimony was not a diagnosis of PTSD. He also conceded that some of Victim's symptoms were consistent with depression. The expert did not testify as to the source of those symptoms—he did not testify that her symptoms demonstrated she had been assaulted—but his testimony was clear that PTSD arises from some form of trauma, i.e., a "serious threat to your life or serious threat to your health and well-being."

¶29　The State's expert testimony was admissible under rule 702 of the Utah Rules of Evidence. "[T]he manifestation of certain behavioral symptoms" and "[e]xpert testimony that such symptoms are consistent with sexual abuse" may have some

probative value as circumstantial evidence. *Kallin*, 877 P.2d at 141. "The probative value of such evidence is usually beyond the ken of a jury" without the help of an expert. *Id.* That is, expert testimony that a victim's symptoms are consistent with PTSD may help triers of fact to better understand the evidence before them. *See* Utah R. Evid. 702(a).

¶30    The State's expert testimony was also permissible under rule 403 of the Utah Rules of Evidence. At issue in this case was whether the abuse occurred—not the identity of the assailant. Defendant admitted he was with Victim on the night in question and was "the only one there," but he maintained that "nothing happened." Trial counsel postulated Victim hallucinated the assault. The expert's testimony, linking Victim's symptoms to PTSD and possible trauma, was probative of whether abuse occurred and did not mislead the jury or confuse the issues. It was also not unduly prejudicial—although the expert testified that Victim's symptoms were consistent with some form of trauma, he did not speculate that Victim had been raped or otherwise sexually abused. Similar testimony has been permitted in other cases. *See, e.g.*, *Kallin*, 877 P.2d at 141 (affirming the trial court's admission of testimony that the "victim's symptoms were 'consistent with' sexual abuse"); *State v. Sloan*, 2003 UT App 170, ¶ 25, 72 P.3d 138 (affirming the trial court's admission of testimony that the victim's "behavior was consistent with sexual abuse").

¶31    Because the expert's testimony was admissible under rules 702 and 403 of the Utah Rules of Evidence, the trial court did not plainly err in admitting it.

¶32    Defendant's ineffective assistance argument also fails. Even had counsel performed deficiently by not objecting to the expert's testimony, the error did not prejudice Defendant. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("An error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

¶33    To show prejudice, Defendant must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Archuleta v. Galetka*, 2011 UT 73, ¶ 40, 267 P.3d 232 (quoting *Strickland*, 466 U.S. at 694). Defendant's theory at trial was that Victim hallucinated the assault. To offer evidence that Victim's trauma stemmed from real rather than hallucinatory events, the State's expert testified that Victim's symptoms were consistent with a description of PTSD. But even more direct evidence of Victim's trauma was offered by the examination nurse, who testified that Victim had six physical injuries—three lacerations on her labia majora and minora, two lacerations in her anal area, and a scratch on her inner thigh. Victim also testified about the assault, her injuries, and the trauma she suffered. Thus, even without the expert's testimony connecting Victim's post-assault symptoms to possible trauma, the jury heard substantial evidence demonstrating that Victim experienced trauma. Other evidence, including the writing on the chalkboard and Defendant's statements during the recorded phone calls, also corroborates Victim's version of the events. Due to the evidence presented at trial, we cannot say that there was a reasonable probability the result would have been different had Defendant's counsel objected to the State's expert testimony. Accordingly, Defendant has not shown ineffective assistance of counsel.

### III. The Ineffective Assistance of Counsel Claim Regarding Defendant's Own Expert Witness Is Inadequately Briefed.

¶34    Defendant also contends that trial counsel rendered ineffective assistance in connection with the defense's own expert witness. Defendant argues counsel's conduct "fell below professional standards of conduct" in three respects. First,

counsel did not give the State notice of the defense expert's intended testimony on the effects of Ambien and hallucinations. Because the State did not have notice, the expert was precluded from testifying on this matter. Second, Defendant faults counsel for not retaining a memory expert to address Victim's memory gaps. Third, Defendant claims counsel was deficient for hiring this particular expert, whose license had been suspended for a time period fourteen years earlier.

¶35    The State argues that this issue is inadequately briefed, and we agree. The Utah Rules of Appellate Procedure require an appellant's brief to "contain the contentions and reasons of the appellant with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9). "Briefs must contain reasoned analysis based upon relevant legal authority. An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *Sloan*, 2003 UT App 170, ¶ 13 (citation and internal quotation marks omitted).

¶36    In a single paragraph, Defendant raises three different claims of ineffective assistance of counsel. Although Defendant cites the relevant authority under which we decide such claims, he has not developed any meaningful legal analysis of his arguments, nor has he provided citations to the record. Defendant only lists the alleged deficiencies of trial counsel regarding the expert testimony and asserts that these decisions appear to have no rational basis. Because Defendant's ineffective assistance of counsel claim is inadequately briefed, we decline to address this contention.

CONCLUSION

¶37    Defendant has not shown either plain error or ineffective assistance of counsel. Victim was competent to testify, and her

testimony was admissible. The State's expert testimony was also admissible under rules 702 and 403 of the Utah Rules of Evidence. And because Defendant's final claim is inadequately briefed, we do not address its merits.

¶38    Affirmed.

———————