**2017 UT App 203**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ADOLFO MIRANDA,
Appellant.

Opinion
No. 20160457-CA
Filed November 9, 2017

Fourth District Court, Provo Department
The Honorable Samuel D. McVey
No. 141401607

Daniel R. Ybarra, Attorney for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and KATE A. TOOMEY concurred.

HARRIS, Judge:

¶1    Defendant Adolfo Miranda was convicted of six counts of
aggravated sexual abuse of a child and three counts of rape of a
child for actions he directed toward his step-daughter (Victim)
when she was between the ages of nine and twelve. He appeals
all nine convictions, contending that the trial court (1) failed to
sanction the State for alleged discovery misconduct, and (2)
improperly admitted evidence of his character and prior bad
acts. For the reasons stated below, we conclude that the State did
not commit any discovery misconduct, and therefore the trial
court's decision not to issue sanctions was sound. However, we
agree that the trial court should not have admitted some of the
evidence in question. But, after a complete review of the trial
record, we are unpersuaded that there is a reasonable likelihood

that the outcome of the trial would have been different had the evidence been excluded. Accordingly, we affirm Defendant's convictions.

BACKGROUND

¶2     Victim's mother (Mother) and Defendant were married in 2010. Thereafter, Defendant moved in with Mother and her children, whereupon he began to invite Victim to watch television and "cuddle" alone with him in his bed. At trial, Victim testified that during this television time she would "cuddle" with Defendant by lying on her side with her back against his chest in the position commonly referred to as "spooning." After they had done this "a couple times," Defendant surprised her by touching her buttocks with his hand over her clothing. Victim was approximately nine years old at the time, and testified that she "thought it was weird," but that she was young and eventually decided it was "probably a normal thing."

¶3     From there, a pattern to their "cuddling" emerged. Victim testified that Defendant would invite her to watch television, have her lock the door, and then begin "cuddling" with her while touching her in increasingly inappropriate ways. Over the course of many repeated "cuddling" sessions, Defendant progressed from touching her buttocks over her clothes to placing his hand under her pants against her naked buttocks. Defendant eventually began touching around and then inside her vagina. Victim stated that this inappropriate contact happened "pretty much every day, like when he had free time and stuff then we'd go [to cuddle]."

¶4     Victim testified that this pattern continued for several years and that, once Defendant had crossed a particular line, he would not de-escalate, but instead always pushed toward increasingly intimate contact. Eventually, Defendant escalated

the "cuddling" beyond touching her buttocks and genitals, and on various occasions he would expose his penis and tell Victim to "grab it and stuff and just start moving it back and forth." Victim also testified that on one occasion Defendant "licked [her] vagina" until she stopped him because she felt "uncomfortable," and then he asked her to "suck on his penis." Victim refused.

¶5     Victim further testified that on "five or six" occasions, Defendant had sexual intercourse with her. The first time, Defendant told her to go downstairs "to cuddle" and then led her to the side of the bed. He then "pulled down [her] pants, and he pulled out his penis, and then he put it inside . . . ."

¶6     Mother testified that, during the relevant time period, her relationship with Defendant was "rocky." Their initial marriage, in 2010, lasted only two years. Mother and Defendant separated in 2012 and eventually obtained a divorce. In late 2013, however, Defendant and Mother reconciled and remarried, but this second marriage did not last either. In May 2014, after only seven months, Mother and Defendant separated again, this time for good. Thereafter, Mother and Defendant began divorce proceedings, where the main issue was custody of the young son that Mother and Defendant had in common.

¶7     Mother testified that, in May 2014, about two weeks after the second separation, she was discussing Defendant with her children and intimated that she would not reconcile with him. In response, Victim disclosed that she did not like Defendant, and informed Mother that "[h]e raped me." Mother contacted the police.

¶8     After an investigation, the State charged Defendant with six counts of aggravated sexual abuse of a child and three counts of rape of a child, all first degree felonies. During pretrial proceedings, Defendant made a discovery request pursuant to rule 16 of the Utah Rules of Criminal Procedure, asking the State to disclose "[a]ny 404(b) evidence of other crimes, wrongs[,] or

acts . . . which the state intend[ed] to introduce" at trial. The State responded by giving notice that it intended to introduce two such witnesses at trial and providing a brief summary of their anticipated testimony. Specifically, the State informed Defendant that it intended to introduce the testimony of V.M., Victim's older sister, that Defendant "touched [V.M.] inappropriately," and the testimony of D.D., a "minor daughter of . . . Defendant's former business partner," that Defendant "touched her sexually" on a previous occasion. The State subpoenaed both of these witnesses for trial, but decided not to call either of them to testify.

¶9      In addition, the State attached to its discovery responses an investigative report from the Orem Department of Public Safety, which summarized assertions gathered from various witnesses. The report included a recitation of an encounter Mother had with investigators, in which she told police that "she and [Defendant had] been separated off and on over the past few years" because of her "concerns [Defendant] was using drugs and [her] belief he was having sexual affairs."

¶10     Eventually, the case proceeded to trial. During opening statements, the State indicated that it would rely primarily on testimony from Victim and Mother to prove Defendant's guilt. Defendant's counsel, in his opening statement, stated that he would attempt to undermine the credibility of those two witnesses. Counsel told the jury that it would "hear about divorce," "infidelity," and "allegations of sexual abuse," and that after hearing about those things it would be presented with "conflicting testimony" and would need to determine which witnesses it believed. Defense counsel theorized that Victim fabricated her allegations of abuse because she "couldn't control what men were coming into [her] home to live" or "control whether [her] father comes back into [her] house," and that she wanted to dissuade Mother from further unstable relationships. Later during the trial, defense counsel argued that Mother had

coached Victim to say that Defendant had sexually abused her so Mother could gain an advantage in the pending divorce case.

¶11 During direct examination of Victim, the State primarily solicited testimony about Defendant's abuse, as described above. The State also asked Victim if she had ever viewed pornography. Victim responded that she had briefly seen pornography on an open tab on Defendant's computer while Defendant was out of the room, and that she closed the tab "really fast" when she saw "naked people."

¶12 During her direct examination, Mother testified primarily about Victim's relationship with Defendant and about changes to Victim's disposition following the abuse. However, Mother also offered some testimony about her two marriages with Defendant. Specifically, Mother testified that her marriages with Defendant had been "rocky," and that Defendant "was very abusive."

¶13 After the conclusion of the State's case, Defendant testified in his own defense. During direct examination, defense counsel turned to the subject of Defendant's relationship with Mother. Defendant stated that there was "a lot of trouble" in the marriage and eventually volunteered that he had "cheat[ed] on [Mother] before, emotionally." He explained that, during the same time period, Mother was with two other people, and he attempted to draw a contrast between his "cheating emotionally" and Mother's alleged physical affairs. Defendant offered his viewpoint that Mother's affairs and hypocrisy were the reasons they separated. Defendant also testified that he believed Mother was coaching Victim to get revenge on him.

¶14 On the morning of the last day of trial, after Defendant's direct examination but before cross-examination, the State informed the court and defense counsel for the first time that it intended to present potential rebuttal evidence concerning the reasons for Mother's separation from Defendant. Specifically, the

State sought permission to re-call Mother to testify that the reasons for her separation from Defendant were not as Defendant had described them but, rather, that they had split up because Defendant was abusive to her and used cocaine. The State also sought permission to cross-examine Defendant about these topics.[1] Defense counsel objected, first indicating that he had asked during discovery for the State to disclose all of its potential character evidence as defined under rule 404(b) of the Utah Rules of Evidence, and next arguing that any probative value that Mother's rebuttal testimony might have would be substantially outweighed by the danger of unfair prejudice to Defendant. Defense counsel also later objected on the ground that the rebuttal testimony would introduce specific evidence of collateral matters into the trial. The trial court overruled these objections, concluding that Mother's testimony was not rule 404(b) evidence but, rather, was rebuttal evidence to which Defendant had "opened the door" "under Rule 402 and 403 and 401" by "going into" the reasons for the separation "in his testimony."

¶15   After the trial court's ruling, the State proceeded with cross-examination of Defendant and asked about his "emotional affair[s]," and Defendant admitted that he had been "talking to someone else" in case his relationship with Mother "didn't work out." The State also asked Defendant whether he had abused Mother and whether he used cocaine. In response, Defendant admitted he had been violent with Mother and acknowledged that he knew Mother believed he used cocaine, although he denied any actual cocaine use.

---

1. Mother's rebuttal testimony, along with the State's cross-examination of Defendant regarding his reasons for the separation, are collectively sometimes referred to herein as "the challenged evidence."

¶16 At this point, the trial court gave the jury a limiting instruction, stating:

> Ladies and gentlemen, this questioning is going into an area regarding the potential motive for [Mother] not wanting [Defendant] to see their son . . . , and so that is the only purpose that you can use this testimony for is to determine what her motive may have been. This is another view of her motive. It doesn't conclusively establish her motive. There's also other evidence that's been offered by [Defendant] regarding her motive, but you can't use this evidence to say that [Defendant] is a bad guy, that he has a propensity to do the things that he's charged with in this case or anything of that nature. You can only use it as evidence of—potential evidence for [Mother's] motive in not wanting him to see the child and for, you know, divorcing [Defendant], the types of things he testified about yesterday.

¶17 After Defendant's testimony was completed, Defendant rested his case. The State then re-called Mother as a brief rebuttal witness. Mother's rebuttal testimony lasted only a few minutes, and covers only five pages of the trial transcript. During the examination, the State asked Mother why she and Defendant separated. In response, Mother said, "[t]here are several [reasons]," with "[t]he main one being his physical abuse." The State asked no follow-up questions about the details of any physical abuse. The State then asked whether there were any other reasons for the separation, to which Mother responded by referencing Defendant's "[c]heating," and stating that she found him "speaking to other [women] on Facebook and emails," and found "pornography on [their] computer."

¶18 At this point, the trial court gave another limiting instruction:

> Ladies and gentlemen, again, this evidence cannot be used to prove that [Defendant] is a bad guy or that he would have some propensity to commit the acts that he has been charged with in this case. Rather, it is used to show why [Mother] divorced him and—her motive for divorcing him, and her motive for not wanting him to see their son. So it's being offered to allow you to weigh the evidence and consider which motive you believe was—that she wants to use—she wants to use [Victim] to keep [Defendant] from seeing the son, or does she not want him to see the son because he does these things—because he's done these things. In other words, that's her motive.

¶19 Following this admonition to the jury, Mother volunteered that there was one more reason she wanted to separate from Defendant. She testified that Defendant had a "drug addiction," that she had given him a second chance to deal with it, and that the second chance had not worked out.

¶20 Following Mother's rebuttal testimony, the trial court read to the jury a full set of post-evidence instructions, and in the course of doing so, reminded the jury not to consider Mother's rebuttal testimony for improper purposes:

> Also, if I gave you limiting instructions such as pertaining to the motive, you must limit your consideration of that evidence to that particular issue, motive or whatever the limiting instruction pertained to.

¶21 After deliberation, the jury convicted Defendant on all charges. A few weeks later, the trial court sentenced Defendant

to six consecutive sentences of fifteen years to life, followed by three consecutive sentences of twenty-five years to life.

¶22    Following sentencing, Defendant moved for a new trial based on the admission of evidence related to his physical abuse of Mother, his cheating, his alleged drug addiction, and his use of pornography. Defendant also argued that the State had not properly disclosed Mother's rebuttal evidence prior to trial and that he had not been given proper notice of that evidence. The trial court denied the motion. Defendant appeals.

ISSUES AND STANDARDS OF REVIEW

¶23    Defendant raises three issues on appeal. First, Defendant contends that his convictions should be reversed, and the case dismissed or at least re-tried, because the State "intentionally withheld" evidence of Defendant's cocaine addiction, pornography use, domestic abuse, and infidelity, after Defendant specifically made a discovery request under rule 16 of the Utah Rules of Criminal Procedure for "[a]ny 404(b) evidence" the State intended to use at "any hearing" in the case. We review a trial court's ruling on a rule 16 issue for abuse of discretion. *State v. Dick*, 2012 UT App 161, ¶ 2, 280 P.3d 445.

¶24    Second, Defendant contends that the trial court erred by allowing the State to present the challenged evidence, arguing that the evidence was both irrelevant and highly prejudicial under rules 401, 402, and 403 of the Utah Rules of Evidence. We review the trial court's decision to admit or exclude evidence for abuse of discretion. *State v. Cuttler*, 2015 UT 95, ¶ 12, 367 P.3d 981.[2] Further, even if we determine that evidence was admitted

_____

2. Defendant asserts, citing *State v. Ramirez*, 817 P.2d 774, 781 n.3 (Utah 1991), that we should review the admission of all evidence for correctness. Defendant misapprehends the law. In *Ramirez*,

(continued…)

in error, we will not disturb the outcome of a trial "if the admission of the evidence did not reasonably [a]ffect the likelihood of a different verdict." *State v. Landon*, 2014 UT App 91, ¶ 3, 326 P.3d 101 (alteration in original) (citation and internal quotation marks omitted).

¶25 Third, Defendant contends the trial court erred in denying Defendant's motion for a new trial, which was predicated on the foregoing evidentiary objections. We review the denial of a motion for a new trial for abuse of discretion. *State v. Loose*, 2000 UT 11, ¶ 8, 994 P.2d 1237. A trial court's legal determinations which serve as the basis for its denial of a motion for a new trial are reviewed for correctness. *Id.*

ANALYSIS

I

¶26 Defendant first contends that his conviction should be reversed, and the case dismissed, due to the State's alleged "bad

---

(…continued)
the Utah Supreme Court examined whether a particular eyewitness's identification was reliable enough to be admitted as evidence at trial or whether its admission was error. *Id.* at 781. The supreme court held that whether "facts are sufficient to demonstrate reliability is a question of law, which we review for correctness." *Id.* In dicta, the supreme court further stated that "[w]hether a piece of evidence is admissible is a question of law, and we always review questions of law under a correctness standard." *Id.* at 781 n.3. But just two years later, the Utah Supreme Court clarified that its previous statement in *Ramirez* about admissibility of evidence being "a question of law," all components of which are reviewed for correctness, was "not correct." *State v. Thurman*, 846 P.2d 1256, 1270 n.11 (Utah 1993).

faith" conduct in intentionally withholding rule 404(b) evidence after Defendant requested it through discovery. "It is a matter of clear Utah law that criminal defendants are entitled to information possessed by the State to aid in their defense." *State v. Tiedemann*, 2007 UT 49, ¶ 40, 162 P.3d 1106; *see also* Utah R. Crim. P. 16(a). Further, "[w]hether prosecutors produce inculpatory evidence under court order or on request, they have a duty to comply fully and forthrightly." *State v. Kallin*, 877 P.2d 138, 143 (Utah 1994). "When the prosecution responds voluntarily to a discovery request . . . two duties arise." *State v. Redcap*, 2014 UT App 10, ¶ 12, 318 P.3d 1202. "First, the prosecution must either produce all of the material requested or specifically identify those portions that will not be produced." *Id.* "Second, when the prosecution agrees to produce any of the material requested, it must continue to disclose such material on an ongoing basis to the defense." *Id.* (citation and internal quotation marks omitted). "Failure to do so is a discovery violation." *Id.*

¶27   Rule 404(b) of the Utah Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act" committed by an individual "may be admissible" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Utah R. Evid. 404(b). Upon a defendant's request in a criminal case, the State must provide reasonable notice if it intends to introduce evidence pursuant to this rule. Utah R. Evid. 404(b)(2). In this case, Defendant specifically requested "[a]ny 404(b) evidence" the State intended to use "at any hearing." The State responded to Defendant's discovery request by disclosing two rule 404(b) witnesses it anticipated calling at trial and providing a brief summary of their expected testimony. The State ultimately did not call either of its anticipated rule 404(b) witnesses at trial, but it did call Mother to present rebuttal evidence as to her reasons for separating from Defendant.

¶28　Defendant argues that Mother's rebuttal testimony was rule 404(b) evidence which should have been disclosed pursuant to his discovery request, that the State knew about it prior to trial, and that the State nonetheless did not disclose the evidence to Defendant until the third day of trial. Because of this, Defendant maintains that the State did not fulfill its duty to produce all of the evidence it should have produced, and urges us to reverse his conviction on that basis. We are unpersuaded.

¶29　As an initial matter, Mother's rebuttal testimony was not rule 404(b) evidence. The State did not ask that she be permitted to testify pursuant to rule 404(b), and the trial court's decision to admit her testimony during trial did not hinge on rule 404(b). The State properly disclosed to Defendant its true rule 404(b) witnesses—the other witnesses who were prepared to testify that Defendant, on previous occasions, had sexually abused them too. Mother's proposed rebuttal testimony is not in this same category, because the State never intended to introduce it to prove any of the propositions identified in the rule. The trial court therefore correctly determined that Mother's rebuttal testimony was not evidence that could be considered responsive to a discovery request that asked for "[a]ny 404(b) evidence." Indeed, Defendant's specific discovery request was for "404(b) evidence" that the State "intend[ed] to introduce" at "any hearing." Defendant has presented no evidence that, prior to his decision to testify about his reasons for separating from Mother, the State intended to elicit testimony from Mother about her reasons for separating from Defendant. Absent an indication that, at some point prior to trial, the State intended to present the challenged evidence at trial pursuant to rule 404(b), the evidence would not have been responsive to Defendant's specific discovery request.

¶30　In addition, the State did disclose to Defendant that it had evidence regarding Mother's reasons for divorcing him. The Orem Department of Public Safety report attached to the State's

discovery responses clearly indicates that Mother told police her separation from Defendant was because of "drugs" and "sexual affairs." Defendant was therefore already privy to information that Mother believed their separation was due to Defendant's inappropriate behavior, and that Mother's view of the reasons for their separation may differ from Defendant's. Defendant therefore cannot claim to be completely surprised by the substance of Mother's testimony.

¶31 There is no indication that, prior to Defendant's testimony about his own views and about the motives for Mother and Defendant's separation, the State intended to introduce any evidence on that point. Following Defendant's testimony, the State was entitled to seek admission of rebuttal evidence that it may not have previously disclosed. *Cf. State v. Houskeeper*, 2002 UT 118, ¶ 28, 62 P.3d 444 (stating that "when a defendant waives his right not to testify, his testimony, like that of any other witness, is subject to being impeached by cross-examination or by rebuttal evidence"). The State properly disclosed its true rule 404(b) witnesses, and properly disclosed the police report that detailed some of Mother's views regarding the reasons for the divorce. Therefore, the State did not commit misconduct at all—let alone misconduct that would warrant reversal or dismissal—when it waited until the last day of trial to disclose to Defendant its intent to call Mother as a rebuttal witness.

II

¶32 Defendant next contends that the trial court erred in admitting Mother's rebuttal testimony and allowing cross-examination of Defendant on the issue of the couple's motives for separating, which evidence Defendant contends was both irrelevant and significantly more unfairly prejudicial than probative. To succeed on a claim that the trial court committed reversible error by admitting evidence that should have been excluded under rules 402 and 403, Defendant must demonstrate

both that the trial court erred by admitting the evidence and that there is a reasonable likelihood that the error affected the outcome of the proceedings. *See State v. Landon*, 2014 UT App 91, ¶ 3, 326 P.3d 101. "For an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." *State v. Knight*, 734 P.2d 913, 920 (Utah 1987). For the reasons stated below, we agree with Defendant that some of the challenged evidence was admitted in error. However, we conclude that the error was not reversible, because we are unpersuaded that there is a reasonable likelihood that the outcome of the trial would have been different without the evidence.

A

¶33    Defendant first asserts that the challenged evidence was irrelevant under rule 401 and thus inadmissible under rule 402. Evidence is relevant if it has "any tendency" to make a fact "of consequence in determining the action" "more or less probable than it would be without the evidence." Utah R. Evid. 401(a)-(b). Irrelevant evidence is inadmissible. Utah R. Evid. 402.

¶34    The concept of "relevance" is extremely broad. *See State v. Reece*, 2015 UT 45, ¶ 64, 349 P.3d 712 (stating that "[e]vidence that has even the slightest probative value is relevant under the rules of evidence" (alteration in original) (citation and internal quotation marks omitted); *see also New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985) (interpreting Fed. R. Evid. 401, and stating that "evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue, but only have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" (citation and internal quotation marks omitted)). Here, the challenged evidence is not directly relevant to the actual elements of the charged crimes. Indeed, Defendant correctly points out that whether he abused

Mother, viewed pornography, used drugs, or engaged in adulterous affairs "had no bearing" on whether he committed the crimes with which he was charged. While the challenged evidence *did* arguably rebut Defendant's explanations for his separation from Mother, Defendant rightly notes that "Mother's motive for divorce" was never at issue in this case.

¶35    However, the evidence does have the potential to affect the factfinder's view of Defendant's credibility, given that the evidence rebuts some of the tangential testimony Defendant voluntarily offered, namely, his reasons for separating from Mother. Evidence that is not directly relevant to the issues in the case, but that may shed light on the credibility of a witness, does have probative value. *See State v. Fairbourn*, 2017 UT App 158, ¶ 44 (stating evidence that "lent credibility" to a witness's "version of events" had probative value); *see also State v. Calliham*, 2002 UT 87, ¶ 38, 57 P.3d 220 (stating that "[w]hether or not these witnesses were credible was a fact of consequence in considering whether [the defendant] was guilty").

¶36    We emphasize, however, that evidence relevant only to tangential questions of witness credibility, and not directly relevant to any of the elements of the crime or cause of action, may have only minimal probative value, which must of course be balanced in each particular case against the other considerations listed in rule 403 (e.g., waste of time, the potential for unfair prejudice). But the probative value of such evidence is not zero, and therefore such evidence qualifies as "relevant" under the broad definition of rule 401.

¶37    In this case, the challenged evidence meets this standard. It did have some tendency to affect the jury's view of Defendant's credibility, and therefore it was "relevant" under the broad definition of the rule. Accordingly, the trial court did not exceed its discretion when it determined that the challenged evidence was admissible under rule 402. However, because the

reasons for Mother and Defendant's separation were not directly relevant to the central question in the case—whether Defendant committed the crimes with which he was charged—the probative value of the evidence, while not zero, was relatively low.

B

¶38 Defendant next argues that even if the challenged evidence had minimal probative value, the trial court should have excluded it under rule 403. A trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Utah R. Evid. 403. "Unfair prejudice results only where the evidence has an undue tendency to suggest decision upon an improper basis." *State v. Johnson*, 2016 UT App 223, ¶ 35, 387 P.3d 1048 (brackets, citation, and internal quotation marks omitted); *see also State v. Hildreth*, 2010 UT App 209, ¶ 44, 238 P.3d 444 (noting that unfairly prejudicial evidence has "the tendency to suggest a verdict on an improper, emotional basis"). Specifically, Defendant argues that the limited probative value of the challenged evidence pales in comparison to the danger of unfair prejudice the evidence presented, which Defendant maintains is apparent "by its nature."

¶39 In response, the State correctly notes that evidence which "may be excludable when elicited or offered by the prosecution to prove its case-in-chief . . . may not be excludable . . . when the responsibility for its introduction may be traced to the defendant." *State v. Dalton*, 2014 UT App 68, ¶ 29, 331 P.3d 1110 (second alteration in original) (citation and internal quotation marks omitted). The State further notes that a "party cannot introduce potentially inflammatory evidence and then later complain when the opposing party attempts to rebut it." *State v. Mahi*, 2005 UT App 494, ¶ 17, 125 P.3d 103. Following these precedents, the State insists that when Defendant testified about

Mother's potential motives for coaching Victim to lie about him and also discussed the reasons for his separation from Mother, he "opened the door" to Mother's testimony concerning her reasons for separating.

¶40   We agree with Defendant that he did not fully "open the door" to all of the evidence the State presented on rebuttal. But by taking the stand and testifying, Defendant invited at least *some* response from the State. For instance, the trial court's decision to allow cross-examination of Defendant with regard to the reasons for the separation was not improper. Once a defendant has chosen to take the stand in his own defense, he must expect to be cross-examined on the issues he brings up, *see Houskeeper*, 2002 UT 118, ¶ 28 (stating that "when a defendant waives his right not to testify, his testimony, like that of any other witness, is subject to being impeached by cross-examination"), and the trial court's decision to allow cross-examination about other potential reasons for the separation was not an abuse of discretion. Moreover, it would not have been an abuse of discretion for the trial court to allow *some* rebuttal testimony from Mother, to the effect that she was not coaching and had never coached Victim to accuse Defendant of inappropriate sexual contact, and that she was not cooperating with the State merely in hopes of gaining advantages against Defendant in divorce proceedings. But this is not the rebuttal testimony that was offered, and we are not persuaded that Defendant opened the door to any and all rebuttal evidence, no matter how inflammatory.

¶41   Certainly, Defendant in his direct examination testimony did discuss, to some extent, the reasons for the deterioration of his relationship with Mother. Accordingly, as noted above, Mother's rebuttal testimony as to her reasons for separating from Defendant had some relevance from a credibility standpoint. But invocation of "credibility" as the gateway to "relevance" does not give a party free rein to introduce any evidence it likes.

Before such evidence may be admitted, there must be a principled and reasoned analysis, under rule 403, of whether the evidence warrants admission. The trial court must examine whether the issue on which the party wishes to impeach is a tangential or collateral issue, and whether introduction of the evidence would lead to "undue delay" or a "wast[e of] time." *See* Utah R. Evid. 403. Similarly, the trial court must examine whether admitting the evidence could lead to a risk of unfair prejudice and, if so, how serious that risk might be.

¶42 In this case, the risk of unfair prejudice, given the nature of the proffered evidence, was high. The evidence the State sought to introduce was extremely inflammatory: that Defendant physically abused Mother, that Defendant used cocaine, that Defendant looked at pornography, and that Defendant had been involved in "emotional" affairs. Many jurors would likely not look kindly on individuals who engage in these activities. There can be no question that this sort of evidence has the potential to cause unfair prejudice. And, as noted, this evidence had very minimal probative value. As our supreme court recently observed, the admission of evidence that is "highly 'attenuated from the facts of the case'" at issue, offered by an "obviously biased" witness and exploring "long-simmering, deep-seated feuds," can end up "subject[ing] the jury to time-consuming trials within a trial" on peripheral issues that are only minimally relevant. *See State v. Martin*, 2017 UT 63, ¶¶ 51–52 (quoting *State v. Tarrats*, 2005 UT 50, ¶ 42, 122 P.3d 581). Such evidence should be excluded generally, and should have been excluded here. The trial court's decision to allow Mother to testify on rebuttal that she separated from Defendant because he was an abusive cheater who looked at pornography and was addicted to drugs was a bridge too far.

¶43 We acknowledge that trial courts have quite a bit of latitude to admit or exclude evidence pursuant to rule 403. *See Diversified Holdings, LC v. Turner*, 2002 UT 129, ¶ 38, 63 P.3d 686.

As we have explained, the trial court's decision to allow the State to cross-examine Defendant about the reasons for his separation from Mother was entirely proper. But a trial court's discretion is not unbounded, and we are persuaded that it was exceeded here by the admission of Mother's rebuttal testimony as to her motives for separating from Defendant. Any probative value this evidence had was substantially outweighed by the potential for unfair prejudice.

## III

¶44 We must next consider whether the erroneous admission of this rebuttal evidence requires reversal. "For an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." *State v. Knight*, 734 P.2d 913, 920 (Utah 1987). Defendant bears the burden of showing that he was harmed by the trial court's error. *State v. Lafferty*, 2001 UT 19, ¶ 35, 20 P.3d 342. In determining whether an error in a criminal case is harmless, we may consider several factors, including the following: "the importance of the complained-of evidence to the prosecution's case, whether that evidence was cumulative, and the overall strength of the prosecution's case." *See State v. Shepherd*, 2015 UT App 208, ¶ 28, 357 P.3d 598.

¶45 Here, Defendant focuses all of his energies on a single factor: the overall strength of the prosecution's case. Specifically, he alleges that there was a high likelihood of a different outcome if Mother's rebuttal evidence had been entirely excluded at trial because this case was "basically [Defendant's] word against [Victim's]." Defendant asserts that "it will always be a close case when the evidence is merely one person's word against another's" and argues that there was a reasonable likelihood of a different outcome for Defendant if Mother's rebuttal evidence had been excluded.

¶46   For several reasons, we are not persuaded that the trial court's error warrants reversal on the facts of this case. Without commenting on the strength of the prosecution's case,[3] there are several other factors that weigh strongly in favor of a determination that the error was indeed harmless.

¶47   First, and most significantly, all four inflammatory elements of Mother's rebuttal testimony were already in evidence before she testified on rebuttal. Three of the four elements were already in evidence even before the trial court's ruling, and prior to either Mother's challenged rebuttal testimony or Defendant's challenged cross-examination. Defendant himself had already testified, on direct examination, that he had participated in "emotional" affairs with other women during his marriages to Mother. Victim had already testified, without objection, that she had seen pornography on Defendant's computer. And Mother had already testified, without objection during the State's case-in-chief, that Defendant had been "very abusive." The fourth element of Mother's rebuttal testimony—that Mother believed that Defendant had a drug problem, even though Defendant himself denied it—came into evidence, at least in substance, during Defendant's cross-examination, which we have already determined was not improper. Thus, all four elements of Mother's rebuttal testimony were already in evidence, in some form, even before Mother took the stand the second time, and therefore Mother's rebuttal testimony was entirely cumulative. Whether the evidence is "cumulative" is one of the factors we are instructed to examine. *See id.* Indeed, when erroneously admitted evidence is

---

3. The trial court, in its ruling on Defendant's motion for new trial, did comment favorably on the strength of the prosecution's case, stating that Victim "gave direct evidence by testifying in detail and credibly," and that Victim's testimony "was impressive and resolute."

cumulative of evidence already before the factfinder, the error may be considered harmless. *See, e.g., State v. Thomas*, 777 P.2d 445, 450 (Utah 1989) (determining that the erroneous admission of an officer's testimony was harmless because it was "merely cumulative" of other testimony); *see also RJW Media v. Heath*, 2017 UT App 34, ¶ 34, 392 P.3d 956 (holding that erroneous admission of testimony was harmless "[b]ecause [the] testimony was cumulative of evidence admitted from other sources," and stating that, due to the cumulative nature of the evidence, "our confidence in the trial court's ultimate decision here is not undermined").

¶48 Second, the erroneously-admitted rebuttal evidence was not central to the prosecution's case, and did not directly shed light on the central question. Indeed, for these reasons, we have already determined that the evidence had only minimal probative value. *See Shepherd*, 2015 UT App 208, ¶ 28 (instructing courts to consider "the importance of the complained-of evidence to the prosecution's case").

¶49 Third, the trial court gave not one but *three* limiting instructions, admonishing the jurors that they could use the rebuttal evidence only for the specific and limited purpose of rebutting Defendant's testimony regarding the reasons for his separation from Mother. These limiting instructions were appropriately tailored to mitigate the risk of harm to Defendant. While we do not operate under any "delusion that a limiting instruction can undo serious prejudice," we nevertheless "recognize[] that limiting instructions . . . reduce somewhat the danger of improper prejudice." *See State v. Peters*, 796 P.2d 708, 712 (Utah Ct. App. 1990). Indeed, our supreme court has referred to limiting instructions as "one of the most important tools by which a court may remedy errors at trial." *State v. Harmon*, 956 P.2d 262, 271 (Utah 1998). Also, we "generally presume that a jury will follow the instructions given it," especially when, as here, Defendant has alleged no facts that would indicate that the

jury did not do so. *See State v. Nelson*, 2011 UT App 107, ¶ 4, 253 P.3d 1094 (citation and internal quotation marks omitted).

¶50    Finally, the rebuttal evidence that the State presented was short and quite limited. Mother's rebuttal testimony lasted just a few minutes and takes up only five pages of trial transcript. Mother's answers to the questions were brief, and the State did not belabor the point by asking detailed follow-up questions. *See Houskeeper*, 2002 UT 118, ¶ 30 (stating that "the potential prejudicial effect of the testimony was minimized" by the fact that the State "refrained from questioning [the witness] about the prior incident beyond those facts pertinent to her characterization of that conversation").

¶51    For all of these reasons, we are not convinced that the outcome of the trial would have been different if Mother had not offered her rebuttal testimony. Accordingly, we conclude that the trial court's error in admitting that evidence does not warrant reversal.[4]

CONCLUSION

¶52    The trial court acted within its discretion in declining to sanction the State for alleged discovery misconduct. The trial court also acted within its discretion in allowing Defendant to be

---

4. Defendant also appeals the trial court's denial of his motion for a new trial. Because we have determined that part of the challenged evidence was properly admitted, and that the error caused by the admission of Mother's rebuttal evidence is harmless, any error committed by denying Defendant's motion for a new trial is also harmless. *See State v. Vigil*, 2013 UT App 167, ¶ 29, 306 P.3d 845 (stating that "because any underlying error was harmless . . . any error in denying [the defendant's] motion for a new trial was likewise harmless").

cross-examined on issues he voluntarily brought up during his direct examination. While the trial court erred in admitting Mother's rebuttal testimony, Defendant has failed to show that he was harmed by that error. Accordingly, we affirm Defendant's convictions.

————