2025 UT App 163

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
WILLIAM PAUL MIKE,
Appellant.

Opinion
No. 20231100-CA
Filed November 13, 2025

Fifth District Court, Cedar City Department
The Honorable Ann Marie McIff Allen
No. 231500246

Benjamin Miller and Debra M. Nelson,
Attorneys for Appellant

Derek E. Brown and Hwa Sung Doucette,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES RYAN D. TENNEY and AMY J. OLIVER concurred.

ORME, Judge:

¶1 One evening, William Paul Mike and his sister (Sister) went out drinking. But the night turned violent when, back at home, Mike repeatedly punched Sister in the face. For this and subsequent events, Mike was convicted of assault, intoxication, and obstructing justice. On appeal, Mike argues that certain witness testimony was improperly admitted at trial and that the jury received an inadequate unanimity instruction for the intoxication charge. But because Mike has not shown that he was prejudiced with respect to any of his claims, we affirm.

## BACKGROUND[1]

### *The Assault*

¶2 In April 2023, Mike and Sister were staying at their mother's house while she was in hospice care. One night, Mike and Sister went out drinking. They each consumed "excessive" amounts of alcohol before separately returning to the house.

¶3 A little after 1:00 a.m., Sister, who arrived home first by taxi, took selfies and sent them to some friends. When Mike arrived shortly afterward, the two began talking. Mike took a short video, timestamped at 1:20 a.m., of Sister laughing while sitting on an armchair. Everything was "fine" until the conversation turned to Mike's children—"a touchy subject for him." Sister told Mike that he needed to step up to his fatherly responsibilities and take a more active role in his children's lives. Mike responded by repeatedly punching Sister in the face. She "blacked out" after the third punch.

¶4 The next thing Sister remembered was Mike dragging her, fully clothed, by her hair and arm into the shower and turning it on. Mike was angry because Sister "was bleeding all over the place," and he shouted, "[L]ook what you made me do." When Mike left the bathroom to fetch more towels to dry her off, Sister took the opportunity to flee to a neighbor's (Neighbor) house.

¶5 For the assault, and for other events described hereafter, Mike was arrested and charged with one count each of aggravated assault, intoxication, and obstructing justice.

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Brown*, 2025 UT App 31, n.1, 566 P.3d 737 (quotation simplified).

*Neighbor's Testimony*

¶6      At the ensuing trial, Neighbor testified that on the night of the assault, she was awakened around 2:00 a.m. by "urgent" and "panic[ked]" knocks on her door and rings of her doorbell. Neighbor's doorbell camera recorded Sister's arrival at the home, and the video was played for the jury. Neighbor's husband answered the door and soon returned to the bedroom to inform Neighbor that Sister was injured. Neighbor ran to the living room, where she saw Sister "soaking wet" and with her face so swollen that Neighbor "could barely see her eyes." Neighbor also observed marks on Sister's arms and blood on her cheeks and mouth. Neighbor was able to identify Sister only from her clothes, which Neighbor had observed Sister wearing earlier that day. Neighbor now observed that Sister's clothes were "tattered" and "disheveled," as if "they had been pulled on." Neighbor described Sister as "extremely upset," "crying," and "inconsolable," to the point that Neighbor at first could not make out what had happened.

¶7      When the State asked Neighbor whether Sister ever disclosed what happened, Mike's counsel (Counsel) objected on hearsay grounds. The court ruled that the testimony was admissible under the excited utterance exception to the rule against hearsay. The court stated that based on Neighbor's doorbell camera recording, it was "apparent" that the challenged hearsay statement was made while Sister "was under the stress or excitement caused by the event or condition." The court also referenced the "proximity in time" between Sister's statement to Neighbor and the underlying events as supporting that conclusion.

¶8      Neighbor then proceeded to testify, "[Sister] was more concerned about us locking the door before she would . . . do anything else we were asking of her." But, Neighbor said, once the door was locked and she sat down, Sister "explained that the

reason she was wet [was] because her brother, [Mike], had beat her up, and when he was done, he dragged her into their mom's handicapped bathroom and rinsed the blood off of her." Neighbor further testified that Sister told her that as soon as Mike left the bathroom, "she escaped and ran straight to [Neighbor's] house for help." Neighbor testified that she then called 911.

### Officer's Testimony

¶9     A responding police officer (Officer) also testified at trial. He recounted that on the night of the assault, he spoke with Sister, whom he described as "emotional," "distraught," and "crying." Officer testified that Sister told him that "her brother beat her up." Footage from Officer's body camera in which Sister stated, "My brother beat me up," was also played for the jury. Officer testified that following the conversation with Officer, Sister was taken to a hospital by ambulance.

¶10     Officer testified that he then crossed the street to speak with Mike. When he arrived, Mike was taking a video of the house with his cellphone. Mike explained that he was "documenting everything." Upon further questioning, Mike gave inconsistent accounts of what happened. He first stated that Sister "fell down." But when asked if he had caused Sister's injuries, he was evasive and did not give a straight "yes or no" answer. He eventually stated that he "was being defensive," and at another point, he said that they "were wrestling." This interaction was also recorded by Officer's body camera and played for the jury. Officer testified that he noted blood on the sleeve of Mike's shirt. He also observed that the knuckles on Mike's hand were "red or discolored," which, based on Officer's training and experience, was "consistent with using your fist to punch something."

¶11     Officer said that Mike showed him the video he had taken of Sister less than an hour earlier sitting on an armchair and laughing. Officer noticed that some of the furniture, including the

coffee table and armchair, were no longer in the same location as they had been in the video. Upon further inspection, Officer found blood under the newly-moved coffee table. When asked why he had tried to hide the blood, Mike answered, "[T]hat's the way it was." Officer also noticed a pool of water between the bathroom and the hallway that "kind of streaks out," suggesting that "someone [ran] out of the shower soaking wet."

¶12 Officer related that he then arrested Mike and placed him in his patrol vehicle. At this point, Mike's demeanor changed. In addition to Officer's testimony about what transpired in the vehicle, footage from the vehicle's camera was played for the jury. Officer recounted that Mike spit his gum at a closed window in the direction of Officer and another officer, and that he kissed the camera. Mike also stated that he had COVID-19 and coughed at the officers. Officer also testified that Mike asked, "[W]hat can I get for . . . assault on a peace officer?" Counsel promptly objected, arguing that because Mike was not charged with assaulting a peace officer, the testimony was "irrelevant and immaterial to this case" and was "pejorative." The State countered that this statement was already admitted through the vehicle's video recording and that it was relevant to proving all three charges. The trial court overruled the objection. Officer then explained— again over Counsel's objection, which the court also overruled— that Mike's question about the consequences of assaulting a peace officer was noteworthy because, based on Officer's training and experience, "when someone asks that, they're not afraid to do it . . . . And it is an officer safety issue at that point, too."

¶13 Lastly, Officer opined that, based on his training and experience, Sister's injuries were inconsistent "with just falling down." Rather, he testified that they were consistent with "being hit in the face . . . repeatedly." Counsel did not object to this testimony.

*Doctor's Testimony*

¶14    The State also presented the testimony of an emergency room physician (Doctor) who treated Sister at the hospital. Doctor testified that Sister was "clinically intoxicated," with a blood alcohol level of .286. Doctor observed "a significant amount of swelling" to Sister's forehead and the left side of her face, as well as a cut on her right cheek. She also had a ruptured eardrum. Doctor testified that Sister told him that "she had been beaten up by her brother, and that he had grabbed her, and they had gotten into a fight."

¶15    Doctor testified that Sister's injuries were "consistent" with her being "struck" or "punched in the face." He further opined that based on the number and locations of the injuries to her face, "[i]t would be rare" for them to be caused by a fall. But on cross-examination, he acknowledged that the injuries could have been caused by multiple falls. As for the ruptured eardrum, Doctor stated that such injuries are "[g]enerally not" caused by falls.

*Jury Instructions, Closing Arguments, and Conviction*

¶16    As relevant to this appeal, the jury instructions directed that to convict Mike on the intoxication charge, the jury was required to find that he "was under the influence of alcohol to a degree that he may have endangered himself or another in a public place or in a private place where he unreasonably disturbed other persons."

¶17    During closing argument, the State asserted, for purposes of the aggravated assault charge, that Sister "did not slip and fall." Instead, the State argued, Sister's comments about Mike's children hurt his pride and "he took all of his anger out on [Sister's] face," which he did "until his knuckles were red" and her "face was swollen" to the point that "her eyes were nearly

shut." The State countered Mike's contention that Sister's injuries were caused by drunken falls by stating that this explanation was inconsistent with the video Mike took of her; that such falls would presumably also cause bruising to Sister's legs and knees, which she did not have; and that Doctor testified that it would be "rare" for such injuries to be caused by falls. The State also suggested that Mike's "question about assaulting a peace officer after he was arrested [was] indicative of his assaultive intent."

¶18    For the obstructing justice charge, the State argued that Mike repeatedly lied to responding officers, including telling them that the furniture had not been moved that night. Additionally, the State asserted that in moving the furniture, it was Mike's "intent to cover up the blood to hinder [the] investigation."

¶19    Lastly, for the intoxication charge, the State urged that, among other things, Mike's behavior in the patrol vehicle showed that he was under the influence of alcohol. Specifically, the State pointed to Mike spitting his gum at the closed window, asking about the consequences of assaulting a peace officer, and kissing the camera. The State then told the jury that Mike "unreasonably disturbed [Sister] in their mother's home . . . by assaulting her."

¶20    During closing argument for the defense, Counsel emphasized the high level of Sister's intoxication and argued that her injuries were sustained from her "falling down all over the place" in a drunken stupor. He also suggested that Sister "may have inflicted some of these injuries on herself intentionally to get [Mike] in trouble."

¶21    The jury convicted Mike on the obstructing justice and intoxication charges. As for the aggravated assault charge, the jury convicted him of assault—a lesser included offense. Mike appeals.

ISSUES AND STANDARDS OF REVIEW

¶22    Mike raises two preserved evidentiary challenges: (1) the trial court admitting Officer's testimony regarding Mike's question about assaulting a peace officer was error because it constituted inadmissible "other acts" evidence and (2) the trial court admitting, under the excited utterance exception, Neighbor's account of what Sister told her had happened was error. "The appropriate standard of review for a district court's decision to admit or exclude evidence is abuse of discretion." *State v. Zimpfer*, 2024 UT App 136, ¶ 31, 558 P.3d 111 (quotation simplified). Additionally, the appellant "bears the burden of showing that [he] was harmed by the trial court's error." *State v. West*, 2023 UT App 61, ¶ 15, 532 P.3d 114 (quotation simplified).

¶23    Mike also raises two unpreserved issues: (1) Officer impermissibly opined on the cause of Sister's injuries and (2) the jury was not properly instructed on Utah's constitutional jury unanimity requirement. He asks us to review both issues under the ineffective assistance of counsel and plain error exceptions to our preservation rule. "Claims for plain error and ineffective assistance of counsel present questions of law, which we evaluate for correctness." *State v. Samora*, 2022 UT App 7, ¶ 16, 504 P.3d 195, *cert. denied*, 525 P.3d 1254 (Utah 2022).

ANALYSIS

I. Other Acts Evidence

¶24    Rule 404(b) of the Utah Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." Utah R. Evid. 404(b)(1). The rule articulates the "fundamental [concept] in our law that a person can be convicted only for acts committed,

and not because of general character or a proclivity to commit bad acts." *State v. Lane*, 2019 UT App 86, ¶ 17, 444 P.3d 553 (quotation simplified). But other acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Utah R. Evid. 404(b)(2), so long as certain requirements are met, *see State v. Von Niederhausern*, 2018 UT App 149, ¶ 17, 427 P.3d 1277.

¶25 Mike argues that Officer's testimony recounting his question, "[W]hat can I get for . . . assault on a peace officer?" constituted impermissible other acts evidence. He contends Officer's testimony was not probative of a noncharacter purpose for the assault, intoxication, or obstructing justice charges. Rather, he asserts that the purpose of its admission "was to establish his propensity to commit crime." But even assuming, without deciding, that the trial court abused its discretion in allowing Officer's testimony on this matter, any such error was harmless.

¶26 "An error is harmless and does not require reversal if it is sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." *State v. Reece*, 2015 UT 45, ¶ 33, 349 P.3d 712 (quotation simplified). *See* Utah R. Crim. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded."). Put differently, to prevail on appeal, the appellant must show that "the likelihood of a different outcome absent the error must be sufficiently high to undermine confidence in the verdict." *Reece*, 2015 UT 45, ¶ 33 (quotation simplified). Here, we are not convinced that there is a reasonable likelihood that even if the challenged testimony had been excluded, Mike would have obtained a more favorable verdict at trial.

¶27 Despite Mike's assertions to the contrary, the jury's finding that Mike repeatedly punched Sister in the face, which formed the

basis for his assault and intoxication convictions, was amply supported by the evidence. As was also his obstructing justice conviction. *See id.* ("Errors are often harmless where there is overwhelming evidence in the record of the defendant's guilt."); *State v. Hatch*, 2025 UT App 132, ¶ 12 ("Courts are generally more readily inclined to conclude errors are harmless when confronted with overwhelming evidence of the defendant's guilt.") (quotation simplified). Sister sustained multiple injuries. Her face was so swollen that Neighbor "could barely see her eyes." Neighbor also observed marks on Sister's arms and that her cheeks and mouth were bleeding. Neighbor testified she was able to recognize Sister only because of her clothes. At the hospital, Doctor noted "a significant amount of swelling" to Sister's forehead and the left side of her face, a cut on her right cheek, and a ruptured eardrum.

¶28    Doctor opined that Sister's injuries were "consistent" with her being "struck" or "punched in the face," and that based on the number and locations of the injuries on her face, "[i]t would be rare" for such injuries to be caused by a fall. Although Mike points to Doctor's later concession that the injuries could have been caused by multiple falls, when coupled with Doctor's additional testimony that ruptured eardrums are "[g]enerally not" caused by falls, Doctor's testimony strongly supports the conclusion that something other than a fall—or even multiple falls—caused Sister's injuries.

¶29    The assault conviction is supported by other physical evidence as well. Blood was found on the sleeve of Mike's shirt, and the knuckles on his hand were "red or discolored" soon after the incident, suggesting that he had punched something. Additionally, footage from Officer's body camera, when compared to the video of Sister that Mike took, showed that some of the furniture had been rearranged in the less-than-one-hour period between the two videos. When Officer found blood under the coffee table, Mike insisted that the table had not been moved,

stating, "[T]hat's the way it was." The act of moving the furniture and the later denial of having done so are suggestive of Mike's guilt for assault—there is little reason for Mike to have done so if Sister had merely fallen—as well as his guilt for obstructing justice. And although Mike's version of events changed throughout his conversation with Officer, when asked whether he had caused Sister's injuries, he at certain points appeared to acknowledge some sort of physical altercation with Sister, stating that they "were wrestling" and that he "was being defensive."

¶30 All this evidence overwhelmingly and independently supports Sister's account that Mike repeatedly punched her in the face and that he moved around the furniture to hinder the investigation. Accordingly, we cannot say that the outcome of the trial would have been any different if the trial court had excluded Officer's testimony about the question Mike posed in the police vehicle.

## II. Excited Utterance Exception

¶31 Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement." Utah R. Evid. 801(c). Unless a rule of evidence or law directs otherwise, hearsay is inadmissible at trial. *Id.* R. 802. One such exception to the rule against hearsay is the excited utterance exception. *See id.* R. 803(2). For a statement to be admitted as an excited utterance, it must relate "to a startling event or condition" and be "made while the declarant was under the stress of excitement that it caused." *Id.*

¶32 Mike argues that the trial court abused its discretion when it overruled his objection to Neighbor's testimony regarding what Sister told her had happened. Specifically, Neighbor testified,

> [Sister] was more concerned about us locking the door before she would . . . do anything else we were asking of her. Once we sat her down, she explained

that the reason she was wet is because her brother, [Mike], had beat her up, and when he was done, he dragged her into their mom's handicapped bathroom and rinsed the blood off of her. And then once he left that room, she escaped and ran straight to our house for help.

Mike argues that this hearsay testimony could not qualify under the excited utterance exception because "Sister's statements were interrupted from the claimed startling event." But we need not reach the merits of Mike's argument because even if the trial court abused its discretion in allowing this challenged testimony, the error was harmless.

¶33 As an initial matter, as discussed above, *see supra* ¶¶ 27–30, overwhelming evidence, aside from Neighbor's testimony, supported Mike's convictions. This alone is a sufficient basis on which to affirm.

¶34 Additionally, Neighbor's testimony that Sister told her Mike "beat her up" is cumulative of other unchallenged testimony and other evidence offered at trial. *See State v. Macleod*, 2024 UT App 32, ¶ 53, 546 P.3d 366 ("When testimony is merely cumulative, we are usually disinclined to find prejudice even when the testimony was improperly admitted. This is because such testimony does not typically offer anything new or additional to the evidentiary picture.") (quotation simplified), *cert. denied*, 558 P.3d 87 (Utah 2024); *State v. Miranda*, 2017 UT App 203, ¶ 47, 407 P.3d 1033 ("[W]hen erroneously admitted evidence is cumulative of evidence already before the factfinder, the error may be considered harmless."), *cert. denied*, 417 P.3d 581 (Utah 2018).[2] Sister testified at trial that Mike punched her repeatedly in

---

2. Mike points to *State v. Samples*, 2022 UT App 125, 521 P.3d 526, *cert. denied*, 525 P.3d 1279 (Utah 2023), in which this court

(continued…)

the face and dragged her into the shower. Additionally, both Doctor and Officer recounted, absent objection, what Sister told them had happened. Doctor testified that she told him "she had been beaten up by her brother, and that he had grabbed her, and they had gotten into a fight." Officer testified that Sister told him "her brother beat her up." The jury also viewed body camera footage of Sister telling Officer, "My brother beat me up."

¶35   Mike asserts that Neighbor's testimony was harmful because it "bolster[ed] Sister's credibility." But in light of the unchallenged testimony from two other witnesses, one of whose testimony was additionally supported by video evidence, there is no reasonable likelihood that the addition of Neighbor's similar testimony tipped the scales on Sister's credibility. Moreover, because of the he-said/she-said nature of their conflicting stories, Mike's own credibility issues—including his inconsistent accounts and untruths told to Officer, all documented by Officer's body camera, combined with the physical evidence supporting Sister's version of events—significantly weaken his harmfulness argument.

¶36   For these reasons, any abuse of discretion in admitting Neighbor's challenged testimony was harmless.

### III. Unpreserved Issues

¶37   Mike additionally argues that Officer offered improper lay testimony regarding the cause of Sister's injuries and that the jury was inadequately instructed on the unanimity requirement for the intoxication charge. Because both of these issues are unpreserved, Mike asks us to review them under the ineffective assistance of

---

"acknowledge[d] the possibility that repetition alone could conceivably cause prejudice in certain circumstances." *Id.* ¶ 75. But for the reasons articulated in this section, the case before us does not present such a circumstance.

counsel and plain error exceptions to our preservation rule. Both exceptions require a showing of prejudice, which mirrors the harmless error standard. *See State v. McNeil*, 2016 UT 3, ¶ 29, 365 P.3d 699 ("[T]he prejudice test is the same whether under the claim of ineffective assistance or plain error."); *State v. Leech*, 2020 UT App 116, ¶ 43 n.7, 473 P.3d 218 ("[T]he showing of prejudice required to establish that preserved errors are harmful is indistinguishable from the showing of prejudice required to establish plain error or ineffective assistance of counsel for unpreserved errors."), *cert. denied*, 481 P.3d 1039 (Utah 2021); *State v. Ray*, 2022 UT App 95, ¶ 50 n.17, 516 P.3d 329 (explaining that the plain error standard for prejudice "mirrors" that of the harmless error doctrine), *cert. denied*, 526 P.3d 827 (Utah 2022). And as with his preserved issues, Mike cannot show that he was prejudiced by these alleged errors.

A.     Officer's Opinion on the Cause of Sister's Injuries

¶38     At trial, Officer opined, based on his training and experience, that Sister's injuries were consistent with "being hit in the face . . . repeatedly" and not "with just falling down." Mike argues that this testimony did not satisfy the requirements of rule 701 of the Utah Rules of Evidence for lay opinion testimony. *See* Utah R. Evid. 701(c) (noting that a witness "not testifying as an expert" must offer "testimony in the form of an opinion" that is "not based on scientific, technical, or other specialized knowledge"). He asserts that "there is nothing in what a police officer does in general or in Officer's stated experience specifically that would enable him to tell the jury his opinion as to what may or may not have caused Sister's injuries."

¶39     But even assuming, without deciding, that this testimony was improper, we are not convinced that Mike was prejudiced by its admission. As discussed above, *see supra* ¶¶ 27–30, Mike's convictions were supported by overwhelming evidence, including Doctor's testimony—particularly regarding the nature

of the injuries and the unlikelihood of a ruptured eardrum being caused by a fall, the blood on Mike's sleeve, his reddened knuckles—and evidence of Mike moving furniture in the living room to cover blood stains. Accordingly, this argument is also unavailing.[3]

## B.     Jury Unanimity

¶40     To satisfy the jury unanimity requirement of the Utah Constitution, a verdict must be unanimous "as to a specific crime" and "on all elements of a criminal charge." *State v. Hummel*, 2017 UT 19, ¶¶ 28–29, 393 P.3d 314 (quotation simplified). *See* Utah Const. art. I, § 10. It is insufficient for a jury to unanimously find "only that a defendant is guilty *of a crime*" and render "a generic 'guilty' verdict that does not differentiate among various charges." *Hummel*, 2017 UT 19, ¶ 26 (emphasis in original; quotation otherwise simplified). In cases where evidence is presented of more distinct criminal acts than there are corresponding charges, to ensure unanimity, "the jury instructions must either (1) link an alleged criminal act to a charge or (2) inform the jury that it must unanimously agree that the same alleged criminal act has been proven beyond a reasonable doubt." *State v. Gollaher*, 2020 UT App 131, ¶ 32, 474 P.3d 1018, *cert. denied*, 481 P.3d 1040 (Utah 2021).

---

3. Mike argues that the cumulative impact of this and the prior two alleged errors undermines his convictions. Reversal is warranted under the cumulative error doctrine if "(1) an error occurred, (2) the error, standing alone, has a conceivable potential for harm, and (3) the cumulative effect of all the potentially harmful errors undermines [the appellate court's] confidence in the outcome." *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 42, 428 P.3d 1038. For the same reasons described above, our confidence in the trial outcome withstands even the cumulative effect of all three alleged errors.

¶41  Here, the jury instructions directed that a conviction on the intoxication charge required a finding that Mike "was under the influence of alcohol to a degree that he may have endangered himself or another in a public place or in a private place where he unreasonably disturbed other persons." *See* Utah Code Ann. § 76-9-701(1) (LexisNexis Supp. 2024).[4] Mike argues that this instruction was insufficient because the State presented evidence of more than one alleged instance of him unreasonably disturbing another. Specifically, Mike contends that the State presented evidence that he unreasonably disturbed (1) Sister by assaulting her; (2) Neighbor when Sister came knocking at her door at 2:00 a.m.; and (3) Officer when, while in the patrol vehicle, Mike spit gum at the closed window, coughed at Officer while claiming to have COVID-19, and asked about the punishment for assaulting peace officers.

¶42  But even assuming error in the jury instructions, the State alleviated any resulting prejudice during closing argument when it clarified to the jury that Mike "unreasonably disturbed [Sister] in their mother's home . . . by assaulting her." *See State v. Garcia-Lorenzo*, 2022 UT App 101, ¶ 39, 517 P.3d 424 ("Jury unanimity problems can sometimes be alleviated if the State carefully identifies for the jury, in closing argument or elsewhere, which act supported each charge.") (quotation simplified), *cert. denied*, 525 P.3d 1263 (Utah 2022); *State v. Mottaghian*, 2022 UT App 8, ¶ 58, 504 P.3d 773 (stating that the unanimity "problem could have been alleviated . . . if the State had identified for the jury—in closing argument, for instance—which act supported each charge") (quotation simplified), *cert. denied*, 525 P.3d 1256 (Utah 2022). Thus, while the evidence may well have supported another variant of this charge, the only act that the State identified for the

---

4. Section 76-9-701 has since been renumbered as section 76-9-110. For convenience, we cite the most recently published version of the Utah Code.

jury as an unreasonable disturbance was Mike's assault of Sister. Additionally, during closing argument, the State made no mention whatsoever of Neighbor in the context of discussing the intoxication charge, and its reference to Mike's behavior in Officer's vehicle was limited to its discussion of the "under the influence of alcohol" element of the charge.

¶43 Moreover, even without the State's clarification during closing argument, we are not persuaded that Mike is likely to have otherwise received a more favorable outcome. Given the jury's finding that Mike assaulted Sister by repeatedly punching her, the jury certainly unanimously agreed on that same underlying conduct when it convicted him on the intoxication charge. *See State v. Naranjo*, 2023 UT App 131, ¶ 49, 538 P.3d 1278; *State v. Case*, 2020 UT App 81, ¶ 26, 467 P.3d 893, *cert. denied*, 474 P.3d 948 (Utah 2020). For these reasons, Mike was not prejudiced by any alleged deficiency in the jury instructions.

## CONCLUSION

¶44 Because Mike has not shown harmful error or prejudice for any of the challenges he raises, we affirm his convictions.

———————